1
2
3

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

4
5
6
7
8
9
10

WOODFIN SUITE HOTELS, LLC and
PACIFIC HOTEL MANAGEMENT, LLC,

              Plaintiffs,

  v.

CITY OF EMERYVILLE,

              Defendant.

_____/

No. C 06-1254 SBA

**ORDER**

11
12
13
14
15
16
17
18
19
20

     This matter comes before the Court on Plaintiffs Woodfin Suite Hotels, LLC and Pacific Hotel Management, LLC's (jointly, "Plaintiffs") Motion for Preliminary Injunction [Docket Nos. 4, 23], Defendant City of Emeryville's ("Defendant" or the "City") Objections to Evidence and Supplemental Evidence [Docket Nos. 41, 57], and Defendant's Request for Judicial Notice [Docket No. 40]. Having read and considered the arguments presented by the parties and the amici curiae in their moving papers, as well as the parties' supplemental briefing papers, the Court finds this matter appropriate for disposition without a hearing. The Court HEREBY DENIES Plaintiffs' Motion for Preliminary Injunction, SUSTAINS IN PART and OVERRULES IN PART Defendant's Objections to Evidence and Supplemental Evidence, and GRANTS IN PART and DENIES IN PART Defendant's Request for Judicial Notice.

21

**BACKGROUND**

22

**I.    Measure C**

23
24
25
26

     On November 8, 2005, residents of the City of Emeryville passed Measure C ("Measure C" or "Ordinance"). On December 6, 2005, Measure C went into effect. Measure C applies to the hotels in the City which have more than 50 rooms (the "Hotels"). Measure C provides for, *inter alia*:

27
28

     &bull;   Minimum compensation of $9 per hour and average minimum compensation of $11 per hour for all employees.

- Annual cost of living increases, calculated by the Consumer Price Index.

- Paid leave at the employees' regular rate of pay for jury duty.

- Protection against discharge for 90 days following a change in ownership of the Hotels or another employer within the Hotels, absent good cause.

- Payment of time-and-a-half for the room cleaners who clean more than 5,000 square feet in an 8 hour work day.

- Maintenance by Hotels of employee compensation records, including names, pay rates, and benefit payments (if the Hotels want to credit benefit payments toward total compensation).

- "Reasonable access" to Hotels by city representatives and organizations assisting employees in the hospitality industry for the purpose of monitoring compliance with Measure C and investigating complaints of non-compliance.

*See* Defendant City of Emeryville's Request for Judicial Notice in Support of Opposition to Motion for Preliminary Judgment [sic], Ex. A (the "Ordinance").[1]

Measure C includes the following findings: "[I]t is proper to regulate employment conditions at large hotels first rather than trying to regulate all employers because [the People] believe that (1) large hotels are better able to afford the proposed conditions than other kinds of employers; (2) many large hotels in the Bay Area are already meeting the employment conditions required by this Ordinance, unlike the situation in other industries; (3) large hotels provide jobs similar to the janitorial jobs already protected by a similar state law on worker retention, Labor Code sections 1060-65; and (4) large hotels are generally less likely to respond to such regulations by closing or reducing employment than other kinds of businesses which can more readily move jobs offshore or to other locations, as large hotels wish to be here because of our city's location."  Ordinance, § V.

---

[1]  Defendant requests that the Court take judicial notice of Measure C pursuant to Federal Rule of Evidence 201(b).  Under Rule 201, a court may take judicial notice of "matters of public record" as long as the facts are not "subject to reasonable dispute."  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (citations omitted).  The ordinance falls within the ambit of Federal Rule of Evidence 201(b)(2), because it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  *See, e.g., Manufactured Home Communities, Inc. v. City of San Jose*, 358 F. Supp. 2d 896, 904 (N.D. Cal. 2003) (taking judicial notice of municipal ordinances), *rev'd on other grounds*, 420 F.3d 1022 (9th Cir. 2005).  Consequently, the Court GRANTS Defendant's request with respect to Measure C.
Defendant also seeks to have the Court take judicial notice of the Notice of Intent to Circulate Petition.  Because the Court does not rely on the Notice of Intent in its ruling, the Court DENIES Defendant's request as moot.

1

2    **II.      Procedural Background**

3          On February 21, 2006, Plaintiffs filed a Complaint for Declaratory and Injunctive Relief (the

4    "Complaint") against Defendant.  The Complaint seeks declaratory and injunctive relief arising from

5    the passage of Measure C, and argues that Measure C is unconstitutional and preempted by state and

6    federal law. Complaint, ¶ 8.  Plaintiffs allege that Measure C was passed to primarily tilt the

7    economic playing field in favor of organized labor.  *Id*., ¶ 14.

8          The same day, Plaintiffs filed the instant Motion for Preliminary Injunction.[2]  In the motion,

9    Plaintiffs assert that they have demonstrated a likelihood of success on the merits, and they will face

10   an imminent and irreparable harm in the absence of a preliminary injunction.  Plaintiffs argue that

11   there is a likelihood of success on the merits because Measure C is preempted by the National Labor

12   Relations Act, including *Machinists* and *Garmon* doctrines, the Employment Retirement Income

13   Security Act of 1974, and California labor law, including wage-and-hour law and at-will

14   employment law.  In addition, Plaintiffs argue that they have demonstrated a likelihood of success

15   on the merits because Measure C conflicts with constitutional privacy rights, is unconstitutionally

16   vague and violates Due Process and Equal Protection Clauses.

17         On March 7, 2006, Don Crosatto, Daniel Leal, Josephine Valdez, and EBASE Committee –

18   Yes on Measure C (the "Amici") filed a motion to intervene.  The Court heard the motion on April

19   11, 2006.  During the hearing, the Amici withdrew their motion to intervene without prejudice, and

20   the Court allowed them to file an opposition to the motion for preliminary injunction as amici curae.

21   In their Opposition to Plaintiffs' Motion for Preliminary Injunction (the "Amici Opposition"), Amici

22   claim that Plaintiffs are unlikely to prevail on the merits and the balance of irreparable injuries

23   weighs against granting a preliminary injunction.

24         Defendant also filed its Opposition to Plaintiffs' Motion for Preliminary Injunction (the

25   "Opposition").  Defendant argues that Plaintiffs do not have standing to challenge Measure C, have

26   _____

27          [2]  After Defendant declined to proceed before a U.S. Magistrate Judge, the action was
     reassigned to this Court on March 3, 2006.  Plaintiffs filed an amended motion before this Court on
28   March 9, 2006.

United States District Court
For the Northern District of California

1    not demonstrated a likelihood of success on the merits, have not demonstrated any risk of irreparable

2    injury, and the public interest will be harmed by the issuance of injunctive relief.

3         On April 19, 2006, the Court requested supplemental briefing from the parties on the issue of

4    standing.  On April 26, 2006, Plaintiffs filed a Supplemental Brief re Standing.  Plaintiffs assert they

5    have standing to challenge each provision of Measure C based on their own stake in the lawsuit,

6    which includes the administrative burden of complying with Measure C, the invasion of their

7    employees' privacy rights, and the direct monetary costs and interference with their operations.  In

8    addition, Plaintiffs argue that it is unnecessary to establish independent standing grounds for every

9    potential argument and sub-issue.

10        On May 3, 2006, Defendant filed its Supplemental Brief in Opposition to Motion for

11   Preliminary Injunction.  In the Supplemental Brief, Defendant argues that Plaintiffs have the burden

12   of demonstrating standing, they must establish such standing for each challenged provision,

13   administrative monitoring and reporting obligations do not constitute injury, and Plaintiffs have

14   failed to demonstrate that Measure C requires them to change their business operations or otherwise

15   injures them.

16                                          **LEGAL STANDARD**

17        Federal Rule of Civil Procedure 65 permits the issuance of a preliminary injunction to

18   preserve the positions of the parties until a full trial can be conducted.  *LGS Architects, Inc. v.*

19   *Concordia Homes*, 434 F.3d 1150, 1158 (9th Cir. 2006) (citing *University of Texas v. Camenisch*,

20   451 U.S. 390, 395 (1981)).  When a party is seeking a preliminary injunction, he or she must show

21   either: "(1) a combination of probable success on the merits and the possibility of irreparable injury,

22   or (2) that serious questions are raised and the balance of hardships tips sharply in [her or his

23   favor]." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839- 40 (9th Cir.

24   2001).  "These two formulations represent two points on a sliding scale in which the required degree

25   of irreparable harm increases as the probability of success decreases."  *Roe v. Anderson*, 134 F.3d

26   1400, 1402 (9th Cir. 1998).

27        Under the sliding scale theory, a party seeking an injunction "need not demonstrate that he

28   will succeed on the merits, but must at least show that his cause presents serious questions of law

4

*United States District Court*
For the Northern District of California

worthy of litigation." *Topanga Press, Inc. v. City of Los Angeles*, 989 F.2d 1524, 1528 (9th Cir. 1993). "Serious questions" are those which are "substantial, difficult, and doubtful, as to make them fair ground for litigation and thus for more deliberative investigation." *Senate of State of Cal. v. Mosbacher*, 968 F. 2d 974, 977-78 (9th Cir. 1992) (citing *Gilder v. PGA Tour, Inc.*, 936 F. 2d 417, 422 (9th Cir. 1991)); *Republic of the Philippines v. Marcos*, 862 F. 2d 1355, 1362 (9th Cir. 1988) ("'serious questions' refers to questions which cannot be resolved one way or the other at the hearing on the injunction and as to which the court perceives a need to preserve the status quo lest one side prevent resolution of the questions or execution of any judgment by altering the status quo."). Although the serious questions posed by the movant "need not promise a certainty of success, nor even a probability of success," he or she must nevertheless demonstrate a "fair chance of success" on the merits. *Gilder*, 936 F.2d at 422; *see also Senate of State of Cal.,* 968 F.2d at 977. Finally, under either of these tests, in cases where the public interest may be affected, the court must consider the public interest as a factor in balancing the hardships. *Harris v. Bd. of Supervisors*, 366 F.3d 754, 760 (9th Cir. 2004) (citing *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992)).

"'The grant of a preliminary injunction is the exercise of a very far reaching power never to be indulged except in a case clearly warranting it.'" *Sierra Club v. Hickel*, 433 F.2d 24, 33 (9th Cir. 1970). *See also Clairol Inc. v. Gillette Co.*, 389 F.2d 264, 265 (2d Cir. 1968) ("The award of a preliminary injunction is an extraordinary remedy, and will not be granted except upon a *clear showing* of probable success and possible irreparable injury.") (emphasis added).

## ANALYSIS

### I.    Standing

To meet Article III standing requirements, Plaintiffs must establish that (1) they suffered an actual and imminent injury, which is concrete and particularized, not hypothetical or conjectural; (2) there is a causal connection between the injury and the conduct of which Plaintiffs complain; and (3) it is likely, rather than speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The burden of proof for standing rests on the Plaintiffs. *Id.* Thus, if Plaintiffs fail to allege facts essential to show jurisdiction, they have no standing. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990), *overruled in part on other*

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  *grounds by City of Littleton v. Z.J. Gifts D-4*, LLC, 541 U.S. 774 (2004).  When only injunctive and

2  declaratory relief is sought, Plaintiffs must show a significant possibility of future harm in order to

3  have standing to bring suit.  *See Nelsen v. King County*, 895 F.2d 1248, 1250 (9th Cir.1990).

4  Pre-enforcement review of an ordinance is usually granted when the ordinance imposes costly,

5  self-executing compliance burdens.  *National Rifle Ass'n of America v. Magaw*, 132 F.3d 272, 279

6  (6th Cir. 1997).

7       As a preliminary matter, Plaintiffs are required to establish standing as to each provision of

8  Measure C, since they are challenging all provisions.[3]  *See FW/PBS*, 493 U.S. at 231 (finding that

9  plaintiffs lacked standing to challenge two provisions of the ordinance, but had standing to challenge

10  other provisions); *Clark v. Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001) ("A plaintiff may have

11  standing to challenge some provisions of a law, but not others.").

12       Plaintiffs assert three bases for standing.  First, Plaintiffs argue that they have standing to

13  challenge the ordinance because as hotels that have more than 50 rooms, they are a target of the

14  ordinance.  Plaintiffs rely on *Skull Valley Band of Goshute Indians v. Nielson*, 376 F.3d 1223 (10th

15  Cir. 2004), in which the Tenth Circuit found standing to challenge a state law restricting storage

16  activities.  However, while the Court finds *Skull Valley* instructive, it is distinguishable because the

17  statutes challenged in *Skull Valley* imposed a "substantial burden" on plaintiffs, such as payment of a

18  five-million-dollar nonrefundable application fee, compliance with complex state regulatory

19  requirements, the posting of a two-billion-dollar bond, and infringement upon the Indian tribe's

20  inherent tribal sovereignty.  Here, on the other hand, Plaintiffs allege "huge administrative burdens"

21  to ensure compliance of subcontractors with minimum wage requirements, "time and money to

22  measure the floor space being cleaned by each room cleaner on an hour-by-hour basis," and

23  "implement[ing] specific policies to avoid . . . output-based wage rates."  Lacy Decl., ¶¶ 12, 18, 19.

24  While Plaintiffs allege "huge administrative burdens," they do not provide any basis for this Court to

25  conclude that Measure C requirements will result in huge burdens.  In fact, Plaintiffs' allegations

26  _____

27  [3]  Plaintiffs argue that they are not required to establish independent standing grounds for
every potential argument and sub-issue.  To the extent Plaintiffs are arguing that they are not
required to establish independent standing grounds for each challenged provision of Measure C, they

28  are incorrect.

1   lead the Court to conclude that the burdens imposed on Plaintiffs – measuring floor space, obtaining

2   data on wages from subcontractors, and changing certain policies – do not rise to the level of the

3   "substantial burden" present in *Skull Valley*.  In addition, not every provision of Measure C imposes

4   such administrative burdens on Plaintiffs.  Accordingly, the fact that Plaintiffs are a "target" of the

5   Ordinance and that the Ordinance on its face applies to them is insufficient to confer standing on

6   Plaintiffs to challenge the Ordinance in its entirety.  *See Clark*, 259 F.3d at 1006-07 (owner of an

7   adult cabaret had standing to challenge some, but not all, provisions of the City of Lakewood's adult

8   cabaret ordinance, even though the ordinance on its face applied to the owner's business).

9          The Court will next address whether Plaintiffs carried their burden to show standing with

10  respect to each provision of Measure C.[4]

11         **A.     Minimum Wage Provision**

12         Measure C provides that the Hotels must pay each employee at least $9 per hour, and the

13  average compensation of all employees during a calendar year shall be at least $11 per hour.

14  Ordinance, § I.A.  The compensation is defined as wages (or salary) and health benefits.  If employer

15  contributions for health benefits are not paid on an hourly basis but the employer nonetheless wishes

16  a credit for such payments, it must present data to the City concerning hours worked and health

17  contributions made, and the City Manager or his designee shall estimate the value of such benefits

18  on an hourly basis.  *Id.*  The rates shall be upwardly adjusted annually based on a regional Consumer

19  Price Index. *Id.*

20         Plaintiffs do not argue that they pay their employees less than $9.00 per hour.  However, they

21  claim that Measure C's broad definition of "employee" imposes substantial administrative and

22

23

24

25  _____

26      [4] Although Plaintiffs assert substantial administrative burdens for all of the provisions of
    Measure C, they have not provided factual support with respect to all of the provisions.  Counsel's
27  conclusory statement to the contrary is insufficient to meet Plaintiffs' burden of showing standing as
    to each provision.  *See FW/PBS*, 493 U.S. at 235 ("the necessary factual predicate [for standing
28  purposes] may not be gleaned from the briefs").  Rather, Plaintiffs have shown that an administrative
    burden is imposed on them only by certain provisions of the Ordinance, as discussed herein.

monetary burdens on them.[5]  Specifically, Plaintiffs provide evidence that there are many contractors

with whom Plaintiffs will have to negotiate compliance issues, including elevator service, computer

technology service, thirteen food and wine purveyors, a roofing contractor, a landscaping contractor,

land association services, fire and safety equipment service contracts, and others.  Supplemental

Declaration of De Davies in Support of Plaintiffs' Supplemental Brief re Standing ("Davies Decl."),

¶ 9; Supplemental Declaration of Randy H. Lacy in Support of Plaintiffs' Supplemental Brief re

Standing ("Lacy Decl."), ¶ 7.  Some of the contractors have informed Plaintiffs that they will not

provide payroll data to Plaintiffs, and Plaintiffs have no way to force them to do so.  Davies Decl., ¶

10; Lacy Decl., ¶ 8.[6]  In order for Plaintiffs to comply with the minimum wage provision, Plaintiffs

will have to ensure that the contractors' employees who fall under the Ordinance's definition of

"employee" receive $9 per hour minimum wage and $11 per hour average wage.  The time and cost

incurred in coordinating compliance efforts with the contractors impose a concrete and particular

burden on Plaintiffs, that absent the Ordinance they would not have to assume.  *See Retail Industry*

---

[5]  Measure C provides: "'Employee' includes not only common-law employees of the operator, but also persons regularly engaged on the premises in providing services to hotel guests as a contractor, subcontractor, tenant, subtenant, licensee or sublicensee, or as an employee thereof. Workers who are not common-law employees of the operator shall not be deemed 'regularly engaged' on the premises unless they spend more than five hours per week there for more than four weeks.  The permittee shall remain ultimately liable for compliance with this Ordinance regardless of whether or not it is the common-law employer of the Employees.  'Employee' does not include any managerial or administrative employees receiving more than $50,000 per year in wages, salary, bonus, commission or other compensation from the Hotel."  *Id.*, § III.2.

[6]  In addition, Plaintiffs provide evidence regarding the wages paid by some of these contractors and the burden of calculating the minimum and average wage for the contractors and coordinating compliance.  Davies Decl., ¶¶ 16, 17.  Defendant objects to this evidence as speculative, conclusory, assuming facts not in evidence, and lacking in personal knowledge and foundation.  The Court finds this evidence speculative.  For example, De Davies, the General Manager for Plaintiff Woodfin Suite Hotels, LLC, declares that "Woodfin currently has no legal or contractual right to access the private payroll records of its contractors."  Davies Decl., ¶ 14.  At the same time, Davies declares that he is "certain that at least some of the contractors must have employees who are paid at an hourly rate of less than $9.00 and an average rate of less than $11.00. If Woodfin are able to ascertain these figures for compliance issues, it could be financially liable in some way for any payment shortfall by its contractors."  Davies Decl., ¶ 17. If Plaintiffs are unable to ascertain the contractors' pay rate for the employees, as they allege, Plaintiffs cannot also claim that they are certain that the contractors pay less than Measure C now requires.  The Court  therefore SUSTAINS Defendant's objection to this evidence.  Even if the Court were to consider this evidence, the Court would not rely on it because the Court finds that the time and cost Plaintiffs will incur in coordinating compliance efforts with the subcontractors constitute a sufficient injury-in-fact to confer standing on Plaintiffs to challenge this provision.  *See Retail Industry*, – F. Supp. 2d –, 2006 WL 2007654, *3.

United States District Court

For the Northern District of California

1   *Leaders Ass'n v. Fielder*, – F. Supp. 2d –, 2006 WL 2007654, *3 (D. Md. July 19, 2006) (the

2   challenged statute required certain employers to report on an annual basis information such as the

3   number of employees, the amounts spent in the preceding year on health insurance, and the

4   percentage of payroll that amount constituted; the court found that the time and cost incurred in

5   meeting this requirement, while somewhat trivial, was nevertheless a concrete and particular injury-

6   in-fact sufficient for standing purposes).  Because the Court finds the reasoning of *Retail Industry*

7   persuasive, it finds that Plaintiffs have standing to challenge the minimum wage provision of the

8   Ordinance.

9       **B.      *Provision Regarding Protection of Employees from Unjust Discharges When a
            New Employer Takes Over***

10

11          Section I.B. of the Ordinance provides that if there is a sale of the hotel or other change

12   resulting in a new person or entity taking over as an employer at the hotel, the new employer must

13   retain all employees for at least 90 calendar days unless there is reasonable and substantiated cause

14   to discharge such employee based on that employee's performance or conduct.  In the event of a

15   layoff during the first 90 days of the new employer's operation, the laid off employee shall be

16   entitled to reinstatement should any position become available within the following 24 months

17   which the employee can perform.   Plaintiffs argue that this provision requires them to "immediately

18   alter" their at-will employment policy by restricting their ability to terminate employees during a 90-

19   day period following a sale or a change in an employer at the hotel.  Davies Decl., ¶ 26; Lacy Decl.,

20   ¶ 24.  According to Plaintiffs, hotels frequently "contract with specialized management companies to

21   run all or part of a hotel's operations" and, under Measure C, Plaintiffs cannot hire any such

22   management company without suspending their at-will employment policy.  Davies Decl., ¶ 27;

23   Lacy Decl., ¶ 25.[7]

24

25          [7]  Defendant objects to this evidence on the grounds that it is speculative, irrelevant,
     conclusory, assumes facts not in evidence, and calls for legal conclusion.  Plaintiffs have not
26   provided any evidence suggesting that they have attempted to hire a management company or plan
     to do so in the near future.  Furthermore, Plaintiffs do not show that a new management company
27   will constitute a new employer for purposes of the 90-day provision and thus would trigger it.
     Accordingly, the Court finds that this evidence is speculative and irrelevant and therefore
28   SUSTAINS Defendant's objections.  *See, e.g., Wal-Mart Stores, Inc. v. County of Clark*, 125

9

1    The Court is not persuaded by Plaintiffs' arguments given the absence of any assertion by

2  Plaintiffs that there are any plans or likelihood of a sale of the hotel or a change in employers.  In

3  *Essence, Inc. v. City of Federal Heights*, 285 F.3d 1272, 1281 (10th Cir. 2002), the Tenth Circuit

4  found that plaintiffs, a nude dancing establishment and two women denied employment as dancers,

5  lacked standing to challenge a portion of an ordinance which allowed the city to deny a business or

6  employee license based on previous criminal convictions.  The court noted that there was no

7  allegation that the dancing establishment is owned or controlled by any individuals subject to the

8  challenged portion.  Nor was there an allegation that the individual plaintiffs have been convicted of

9  crimes.  The court explained that "[m]erely because [the dancing establishment] is prospectively

10  inhibited from such ownership and employment arrangements is in this case a hypothetical injury."

11  *Id.*  In addition, the court found that plaintiffs lacked standing to challenge the section of the

12  ordinance allowing the denial of an application for a business license for an adult entertainment

13  establishment.  The dancing establishment already had a license.  While the ordinance required a

14  new application in the event of a change in ownership, the dancing establishment had not alleged

15  that it would change ownership or was likely to do so.  Thus, the court found that it was "pure

16  conjecture" to conclude that the dancing establishment would again have to apply for a new license.

17  *Id.*

18    Similarly, Plaintiffs have not alleged that there are any plans to sell the hotel or change any

19  employer.  Instead, they only assert conclusory allegations regarding what is common in the hotel

20  industry.  Accordingly, the Court finds that Plaintiffs have not demonstrated that they have standing

21  to challenge this provision of the Ordinance because the injury they allege is hypothetical.

22    ***C.    Workload Standards for Room Cleaners Provision***

23    Section I.C. of the Ordinance provides that employees working as room cleaners shall be

24  paid at least time-and-a-half the minimum average compensation of $11 per hour for all time worked

25  in a day if required to clean rooms amounting to more than 5,000 square feet of floorspace in an

26  ───────────────────────

27  F.Supp.2d 420, 430 (D. Nev. 1999) (the court found an affidavit provided by Wal-Mart's director of
real estate that Wal Mart had plans for two additional "Supercenters" in the next 18-24 months

28  "speculative in nature," because no evidence was provided that land for these additional sites had
been purchased or pieces of property had been identified for development).

United States District Court

For the Northern District of California

1    eight-hour workday.  Plaintiffs argue that tracking of employee compliance with the square footage

2    based compensation scheme would require them to spend time and money to measure the floor space

3    being cleaned by each room cleaner on an hour-by-hour basis, and to implement specific policies to

4    avoid paying time-and-a-half to room cleaners, which would restrict productivity.  Davies Decl., ¶

5    20; Lacy Decl., ¶ 18.[8]   The administrative burden of measuring floor space, even if trivial, is

6    nevertheless a concrete and particular burden which Plaintiffs would not otherwise be required to

7    assume absent this Ordinance.  *See Retail Industry*, – F.Supp. –, 2006 WL 2007654 at *3.

8    Accordingly, the Court finds that Plaintiffs have standing to challenge this provision.

9              **D.    *Paid Leave for Jury Duty Provision***

10              Section I.D. requires each large hotel to ensure that employees are provided with paid leave

11    for jury duty.  Plaintiffs neither make an argument nor provide any evidence how this provision

12    injures them.  They do not assert that they currently do not provide paid leave for jury duty.

13    Plaintiffs simply argue, conclusorily, that "substantial administrative burdens are imposed on

14    Plaintiffs as a result of every one of Measure C's regulatory requirements."  Plaintiffs bear the

15    burden of proof with respect to standing to challenge each provision.  They have not carried their

16    burden with respect to this provision.  *See FW/PBS*, 493 U.S. at 235 ("the necessary factual

17    predicate [for standing purposes] may not be gleaned from the briefs").  The Court is not inclined to

18    fill the void with assumptions.  Thus, the Court finds that Plaintiffs have not demonstrated that they

19    have standing to challenge this provision.

20              **E.    *Compliance with Enforcement Provision***

21              Section I.E. provides that hotel compliance with enforcement provisions, set forth in section

22    IV of the Ordinance, shall also be a condition for a permit.  Since the Court finds that Plaintiffs have

23    standing to challenge one of the enforcement provisions, *see infra* at 14, and Section I.E. necessarily

24

25              [8] Defendant objects to this evidence on the grounds that it is speculative, conclusory,
       irrelevant, and lacks foundation, and argues that Plaintiffs have not asserted that any employee at
26    this time cleans more than 5,000 square feet of floor space in a workday.  Plaintiffs did not have to
       calculate the floorspace cleaned by each room cleaner until the Ordinance was passed.  *See*
27    Plaintiffs' Supplemental Brief re Standing at 5; Lacy Decl., ¶ 18.  Plaintiffs cannot be required to
       bear this expense to support a motion in which they argue that they should not have to expend this
28    time and money.  Thus, the Court OVERRULES Defendant's objections to this evidence.

United States District Court
For the Northern District of California

relies on all enforcement provisions, the Court finds that Plaintiffs have standing to challenge this provision.

### F.    City Costs to Be Covered by Permit Fees Provision

Section II of the Ordinance provides that each hotel subject to the Ordinance shall pay a permit fee annually to the City representing its share of city costs in enforcing the Ordinance. The permit fee is a concrete and particular burden which Plaintiffs would not otherwise be required to assume absent this Ordinance. *See Retail Industry*, – F.Supp. –, 2006 WL 2007654 at *3. Accordingly, the Court finds that Plaintiffs have standing to challenge this provision.

### G.    Enforcement Provisions

Section IV contains the enforcement provisions which enable the City, City residents, organizations operating within the City and employees of large hotels to enforce the Ordinance. Specifically, such persons or entities can bring an action in the Superior or Municipal Court for injunctive relief and to collect damages for all persons injured by the violation of the Ordinance and to collect penalties for the City. The enforcement provisions further require each large hotel to maintain a record of each employee's name, pay rate, and if the hotel claims credit for health benefits, the sums paid by the hotel for the employee's health benefits. The hotel is required to submit to the City a copy of such records annually. Finally, the enforcement provisions require each large hotel to permit reasonable access to its workforce inside the hotel to authorized City representatives or any organization assisting employees in the hospitality industry. The access may be used solely for the purpose of monitoring compliance with the Ordinance, and it includes the right of City representatives to inspect and copy payroll records, which information may only be used for purpose of enforcing the Ordinance.

Plaintiffs claim that this provision injures them because: (1) disclosure of employee records to City officials would make them publicly accessible to any request under the California Public Records Act; (2) employees will quit if salary and social security numbers are released; and (3) access to the workforce would damage Plaintiffs' ability to maintain good order and discipline. Davies Decl., ¶ 32 ("Many of [the hotel's] employees have reported that they will quit their jobs with no advance notice if [the hotel] turns over their salary and social security information to outside

parties."); Lacy Decl., ¶¶ 28, 29 ("Allowing outside groups to enter [the hotel's] premises and solicit its workforce during their work hours will be very harmful to its ability to maintain good order and discipline within its workforce.  [New paragraph]  Measure C also requires the disclosure of [the hotel's] employee 'payroll' records to City officials, whereupon they could become publicly accessible to any request under the California Public Records Act ('CPRA').  [The hotel's] payroll records include private information . . . .  As the custodian of these private records, [the hotel] has a duty to prevent any public disclosure of this information.").[9]

Under the doctrine of "third-party" or "*jus tertii*" standing, plaintiffs may assert the rights of others not before the court if they show that: (1) they have a close relationship with the person who possesses the right, and (2) there is a hindrance to the possessor's ability to protect his or her own interests. *Aid for Women v. Foulston*, 441 F.3d 1101, 1111-12 (10th Cir. 2006).  Plaintiffs have made no such showing.  Even if the Court were to find that Plaintiffs have the requisite close relationship with their employees, Plaintiffs have not shown that there is a hindrance to the employees' ability to protect their own interests.  Requiring employees to assert their own rights is essential to ensure effective advocacy.  *See, e.g., Viceroy Gold Corp. v. Aubry*, 75 F.3d 482, 489 (9th Cir. 1996) (finding that employer did not have standing to assert its employees' NLRA preemption claim); *U.S. v. Amalgamated Life Ins. Co.*, 534 F. Supp. 676, 679 n. 5 (S.D.N.Y. 1982) ("[T]here is . . . a danger in recognizing standing for a party asserting the privacy rights of others when the interests of the party asserting the privacy rights and the parties possessing the privacy rights differ. The third party, whether an employer or insurance company, may present a more vigorous defense on privacy grounds than would the employees after properly considering all of their interests.").  Thus, Plaintiffs have not demonstrated that they have standing to challenge Measure C's enforcement provisions on behalf of their employees.

Furthermore, Plaintiffs have not demonstrated that the enforcement provision requiring hotels to allow city representatives to inspect and copy employees' payroll records injures them.

---

[9]  Defendant objects to this evidence on the grounds that it is speculative, conclusory, lacks foundations, lacks personal knowledge, and assumes facts not in evidence.  The Court OVERRULES Defendant's objections as moot because the Court finds that Plaintiffs have not demonstrated that they have standing to assert rights of third-parties, namely, their employees.

United States District Court
For the Northern District of California

1  They have produced four declarations from employees speculating that they may be inclined to quit

2  if third parties such as City representatives or City residents have access to their payroll records and

3  social security numbers without their authorization.  *See* Declaration of Christopher Maikish (a sales

4  manager); Declaration of Nonito Matocinos (a food and beverage manager); Declaration of Monica

5  Roca (administrative bookkeeper); Declaration of Noel Franco (banquet server).  Defendant objects

6  to these declarations on the grounds that they lack foundation because Measure C does not require

7  disclosure of personnel and payroll information to any City resident; they are irrelevant and

8  speculative; and they assume facts not in evidence.  First, it is not clear that Measure C  actually

9  applies to any of these declarants.[10]  If Measure C does not apply to these employees, the evidence

10  that they may be inclined to quit is irrelevant.  Furthermore, California Government Code Section

11  6254(n) exempts from disclosure "personal financial data required by a licensing agency and filed by

12  an applicant with the licensing agency to establish his or her personal qualifications for the license,

13  certificate or permit applied for."  Cal. Gov. Code § 6254(n).  Section 6254(c) exempts from

14  disclosure "personnel, medical, or similar files, the disclosure of which would constitute an

15  unwarranted invasion of personal privacy."  Cal. Gov. Code § 6254(c).  Consequently, the disclosure

16  of employee information for licensing and regulatory purposes would not result in a public

17  disclosure because it is insulated from disclosure pursuant to the California Public Records Act.  In

18  addition, state agencies already have the right to review payroll records in connection with state

19  minimum wage laws.  Cal. Lab. Code § 1174(b).  Thus, Plaintiffs will not suffer any additional

20  burdens as a result of Measure C.

21      Similarly, Plaintiffs have not provided any evidence that allowing outside groups to enter

22  Plaintiffs' premises and solicit its workforce during their work hours will disrupt good order and

23  discipline, except to provide the Court with a conclusory prediction to that effect, which is

24  insufficient to confer standing on Plaintiffs.  *See United Transp. Union v. I.C.C.*, 891 F.2d 908, 912

25  (D.C.C. 1989) ("When considering any chain of allegations for standing purposes, we may reject as

26

27      [10]  Measure C defines employees as those who receive compensation under $50, 000 per year.  None of the declarants states that he or she receives compensation under $50,000 or that Measure C applies to him or her.

28

14

**United States District Court**

For the Northern District of California

1   overly speculative those links which are predictions of future events . . . .); *Allen v. Wright*, 468 U.S.

2   737, 751 (1984) ("The injury alleged must be . . . 'distinct and palpable' . . . and not 'abstract' or

3   'conjectural' or 'hypothetical' . . . ."). Since access is only allowed to ensure compliance or

4   investigate a complaint of non-compliance with Measure C, there is no basis to conclude that such

5   access would result in inappropriate solicitation of Plaintiffs' employees by unions and, as a

6   consequence, a disruption of "good order and discipline."

7     The only enforcement provision for which Plaintiffs have made a sufficient showing of

8   standing relates to maintenance of employee records and the annual provision of a copy of these

9   records to the City. *See* Ordinance, § IV.E. For the reasons discussed with respect to provisions

10  under sections I.A. and I.C. of the Ordinance, the Court finds that the time and expense mandated by

11  such an annual reporting requirement is sufficient to constitute injury-in-fact. *See supra* at 7-8, 10-

12  11. *See also Retail Industry*, – F. Supp. 2d –, 2006 WL 2007654, *3.

13    For the foregoing reasons, the Court finds that Plaintiffs have not demonstrated that they

14  have standing to challenge any provisions of the Ordinance, except for the minimum wage

15  provision, set forth in section I.A.; the workload standards for room cleaners provision, set forth in

16  section I.C.; the compliance with enforcement provision, set forth in section I.E.; the permit fees

17  provision, set forth in section II; and the annual reporting requirement, set forth in section IV.E.

18  **II.**  **Preliminary Injunction**

19    **A.**  ***Irreparable Injury***

20    When a party is seeking a preliminary injunction, they must show either: "(1) a combination

21  of probable success on the merits and the possibility of irreparable injury, or (2) that serious

22  questions are raised and the balance of hardships tips sharply in [his or her favor]." *Stuhlbarg Int'l*

23  *Sales Co.*, 240 F.3d at 839- 40. "These two formulations represent two points on a sliding scale in

24  which the required degree of irreparable harm increases as the probability of success decreases."

25  *Roe*, 134 F.3d at 1402. "Under any formulation of the test, plaintiff must demonstrate that there

26  exists a significant threat of irreparable injury." *Oakland Tribune, Inc. v. Chronicle Publishing Co.*,

27  762 F.2d 1374, 1376 (9th Cir. 1985). If the Court determines that Plaintiffs have not made a

28  showing of "a significant threat of irreparable injury," the Court does not need to decide whether

United States District Court

For the Northern District of California

1   Plaintiffs will succeed on the merits.  *Id.*

2       Plaintiffs argue that they will suffer irreparable injury because (1) if they are required to

3   increase employee compensation and Measure C is ultimately invalidated, California Labor Code §

4   221 would prevent them from recouping any additional wages paid to meet the minimum

5   compensation requirements of Measure C; (2) Plaintiffs would have to alter pre-existing contracts

6   with third-parties since several of the third-party contractors indicated that they would sever the

7   contracts with Plaintiffs rather than operate under the terms imposed by Measure C; (3) Measure C

8   would disrupt operations by allowing impermissible union solicitations of employees; and (4)

9   Measure C interferes with the state and federal constitutional rights of Plaintiffs, their employees

10  and contractors.

11      Plaintiffs' first contention, as presented, is without merit.  Plaintiffs have not alleged or

12  provided any evidence that they will have to increase their employee compensation.  Defendant

13  asserts that Plaintiffs were already paying their employees the minimum wages required by Measure

14  C prior to Measure C's enactment, and Plaintiffs have neither rebutted nor responded to Defendant's

15  assertion.  Clearly, without any assertion or evidence that they will have to raise wages, there is no

16  legitimate basis to conclude that they will need to recoup additional wages paid.

17      Plaintiffs' second argument that damage to existing business relationships and accumulated

18  goodwill constitutes a threat of irreparable harm is not persuasive.  Plaintiffs' reliance on *Stuhlbarg*

19  *Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) to support this proposition

20  is misplaced, because it is a trademark case, and irreparable injury may be presumed from a showing

21  of the likelihood of success on the merits (which involves the likelihood of confusion between

22  plaintiff's and defendant's marks) in trademark cases.  *See GoTo.com, Inc. v. Walt Disney Co.*, 202

23  F.3d 1199, 1205 n. 4 (9th Cir. 2000).  Outside of trademark cases, "'economic and reputational

24  injuries are generally not irreparable.'"  *Bannum, Inc. v. District of Columbia*, – F.Supp.2d –, 2006

25  WL 832466, at *2 (D.D.C. March 30, 2006) (internal citation omitted); *see also Vera, Inc. v. Tug*

26  *Dakota,* 769 F.Supp. 451, 454 (E.D.N.Y. 1991) ("[I]f the wrongful activity threatens only the

27  disruption as opposed to the destruction of an ongoing business there is no irreparable injury.").

28  This is because economic and reputational injuries can be adequately compensated at a later date, in

16

United States District Court

For the Northern District of California

1    the ordinary course of litigation.  Here, Plaintiffs have not shown that their businesses will be

2    destroyed if, as Plaintiffs allege, several subcontractors terminate their contracts with Plaintiffs.  Nor

3    have Plaintiffs shown that the economic damages they will suffer as a result of having to find new

4    subcontractors cannot be adequately compensated at a later time.

5           Plaintiffs' third contention is that they will suffer irreparable harm because Measure C would

6    disrupt operations by allowing impermissible union solicitations of employees.  Plaintiffs lack

7    standing to challenge the provision, allowing any organization assisting employees in the hospitality

8    industry access to the hotels' workforce to be used for the purpose of monitoring compliance with

9    the Ordinance, because they have not provided any evidence that the provision will injure them in

10   the distinct and palpable, rather than conjectural or hypothetical way.  *See supra* at 11-14.  *See also*

11   *Allen*, 468 U.S. at 751 ("The injury alleged must be . . . 'distinct and palpable' . . . and not 'abstract'

12   or 'conjectural' or 'hypothetical' . . . .").  The access is allowed solely for the purpose of monitoring

13   compliance with the Ordinance.  Thus, Plaintiffs' allegations that unions will use such access to

14   impermissibly solicit their employees to join the unions is wholly speculative.  It is well-settled that

15   a preliminary injunction will not issue to prevent a mere speculative injury.  *See Regents of*

16   *University of California v. American Broadcasting Companies*, 747 F.2d 511, 523 (9th Cir. 1984).

17   Thus, this argument fails as well.

18          Finally, Plaintiffs set forth a two-prong argument that Measure C's interference with the state

19   and federal constitutional rights of Plaintiffs, their employees and contractors constitutes irreparable

20   harm.  First, Plaintiffs assert that the injury to the employees will result from the disclosure of their

21   confidential information.  As discussed previously, Plaintiffs lack standing to assert the rights of

22   third parties.  Second, Plaintiffs rely on *Associated Gen. Contractors of Cal., Inc. v. Coalition for*

23   *Economic Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991), for the proposition that the denial of

24   constitutional rights constitutes irreparable harm for purposes of injunctive relief.  In *Associated*

25   *Gen. Contractors*, the Ninth Circuit reiterated the rule that an alleged unconstitutional infringement

26   will often be sufficient to presume irreparable harm.  *Id.*  However, it reserved the question whether

27   a presumption arises in cases where a plaintiff, as here, has asserted primarily economic damage.  *Id.*

28   at 1412 n. 9 (citing *Northeastern Florida Chapter of Ass'n of General Contractors of America v.*

*City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990)).  In *Northeastern*, the Eleventh Circuit found that the presumption did not arise in cases where the plaintiff has asserted primarily economic damage and has not alleged an invasion of privacy or a violation of the First Amendment rights.  *Id.* at 1285-86. The following language in *Northeastern* is particularly instructive:

> When a federal court before trial enjoins the enforcement of a municipal ordinance adopted by a duly elected city council, the court overrules the decision of the elected representatives of the people and, thus, in a sense interferes with the processes of democratic government. Such a step can occasionally be justified by the Constitution (itself the highest product of democratic processes).  Still, preliminary injunctions of legislative enactments – because they interfere with the democratic process and lack the safeguards against abuse or error that come with a full trial on the merits – must be granted reluctantly and only upon a clear showing that the injunction before trial is definitely demanded by the Constitution and by the other strict legal and equitable principles that restrain courts.

*Id.* at 1285.

Plaintiffs have failed to make a clear showing that the preliminary injunction is necessary to prevent irreparable harm.  Plaintiffs' Motion for Preliminary Injunction is DENIED on that ground. *See Oakland Tribune,* 762 F.2d at 1376 (if the court determines that plaintiffs have not made a showing of "a significant threat of irreparable injury," the court does not need to decide whether plaintiffs will succeed on the merits).

### B.    *Likelihood of Success*

Even if the Court were to find that Plaintiffs have demonstrated a significant threat of irreparable injury, the Court would nevertheless deny the motion for preliminary injunction. Plaintiffs have not shown a likelihood of success on the merits.

i.    <u>Preemption by the National Labor Relations Act</u>

*(a)    Machinists Doctrine*

Plaintiffs argue that they are likely to succeed on the merits because Measure C is preempted by the National Labor Relations Act ("NLRA").  Although the NLRA does not contain an express preemption clause, "the Supreme Court has nevertheless articulated two NLRA preemption principles." *Associated Builders v. Nunn*, 356 F.3d 979, 987 (9th Cir. 2004).  The two principles include the *Machinists* doctrine and the *Garmon* doctrine.  Plaintiffs assert that Measure C is preempted by both.

The *Machinists* doctrine prohibits States from imposing restrictions on labor and

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

management's "'weapon[s] of self-help'" that were left unregulated in the NLRA because Congress

intended for tactical bargaining decisions and conduct "'to be controlled by the free play of economic

forces.'"  *Associated Builders*, 356 F.3d at 987 (*citing Lodge 76, Int'l Ass'n of Machinists v. Wis.

*Empl. Relations Comm.*, 427 U.S. 132, 140 (1976)).

Plaintiffs argue that Measure C is preempted under the NLRA because it targets four hotels,

and interferes with their use of legitimate "economic weapons" in their bargaining with employees.

They rely on *Chamber of Commerce v. Bragdon*, 64 F.3d 497 (9th Cir. 1995) as support for their

argument that it is unlawful for "prevailing wage requirements" to target specific entities, especially

when they are "so restrictive as to virtually dictate the results" of collective bargaining.  *Id.* at 501.

Plaintiffs' reliance on *Bragdon* is misplaced.  In the cases following *Bragdon*, the Ninth Circuit has

explained that:

> *Bragdon* must be interpreted in the context of Supreme Court authority and our other, more
> recent, rulings on NLRA preemption.  While *Bragdon* emphasized that the Contra Costa
> County ordinance 'targets particular workers in a particular industry,' *id.* at 504, we have
> since explained on several occasions that the NLRA does not authorize us to preempt
> minimum labor standards simply because they are applicable only to particular workers in a
> particular industry. [citations omitted]  It is now clear in this Circuit that state substantive
> labor standards, including minimum wages, are not invalid simply because they apply to
> particular trades, professions, or job classifications rather than to the entire labor market.

*Associated Builders*, 356 F.3d at 990.  Furthermore, Measure C imposes a minimum wage

regulation, rather than a prevailing wage requirement, and the Ninth Circuit in *Bragdon* expressly

distinguished minimum wage regulations as lawful.  *Id.* at n. 8 (citing *Bragdon*, 64 F.3d at 502).

Plaintiffs next argue that Measure C infringes on the collective-bargaining process by

"tilt[ing] the negotiating field in labor's favor by giving extra powers to unions . . . ."  Motion at 10.

Specifically, Plaintiffs claim that such infringement stems from the following provisions: (1) access

to Plaintiffs' workforce by organizations assisting employees in the hospitality industry for the

purpose of ensuring Plaintiffs' compliance with the Ordinance (§ IV.G); (2) disallowing non-union

employees to waive any provisions of the Ordinance and allowing the unions to waive them (§

IV.D.); and (3) the 90-day stay on layoffs provision following a sale of the hotel or a change of the

employer within the hotel (§ I.B.)  Because Plaintiffs have not demonstrated that they have standing

to challenge any of these provisions, none of the arguments supports a finding of a likelihood of

1    success on the merits.[11]

2        Finally, Plaintiffs argue that by virtue of Measure C, City officials are impermissibly injected

3    into labor negotiations.  Specifically, Plaintiffs argue that Measure C requires the City Manager to

4    fix the value of any benefits package offered by Plaintiffs, thereby manipulating any negotiated

5    apportionment of employee compensation between cash wages and health benefits.  This argument

6    is pure hyperbole.  Measure C requires no such thing.  Measure C leaves it to up the employer and

7    employees to determine how much money to spend on wages versus benefits, or even whether to

8    provide any benefits.  The employer is free to provide benefits on an hourly basis or not on an hourly

9    basis.  Should the employer choose to provide benefits on an hourly basis, the City Manager has no

10   authority to fix any benefits packages.  If the employer chooses to provide benefits and to do so not

11   on an hourly basis, the employer still does not need to provide any benefits data to the City Manager,

12   if the employer does not want to receive a credit for such benefits.  Only if the employer chooses to

13   provide health benefits, *and* to do so not on an hourly basis, *and* to receive a credit for the benefits,

14   must the employer present data to the City for the City Manager to estimate the value of such

15   benefits on an hourly basis.  However, Plaintiffs are incorrect in suggesting that the City Manager

16   has any authority to force the employer to provide a certain amount of health benefits.  *See*

17   Ordinance, § I.A.3.[12]

18

---

19   [11]  Even if the Court were to find that Plaintiffs have standing to challenge these provisions,
20   Plaintiffs would still be unable to demonstrate likelihood of success on the merits.  For example, the
     waiver provision expressly provides an exception to the terms of Measure C for "written valid
21   collective bargaining agreement[s]."  Ordinance, § IV.D.  In *Viceroy Gold Corp.*, the Ninth Circuit
     addressed section 750.5 of the California Labor Code  prohibiting a period of employment more than
22   eight hours within a 24-hour period for non-union employees, and allowing a period of employment
     up to 12 hours when the employer and a labor organization entered into a collective-bargaining
23   agreement.  75 F.3d at 489.  The Ninth Circuit found that such a provision was not preempted by the
     *Machinists* doctrine because it was a narrowly tailored opt-out provision that the Supreme Court
24   found valid in *Lividas v. Bradshaw*, 512 U.S. 107 (1994).  Here, the waiver provision which does
     not allow non-union employees to waive any provisions of Measure C, but allows the unions to
25   negotiate around Measure C requirements is very similar to the provision in *Viceroy* and
     consequently, it is unlikely to be preempted by the NLRA.

26   [12]  Section I.A.3 provides: "'Compensation' shall be defined herein as wages (or salary) and
27   health benefits.  If employer contributions for health benefits are not paid on an hourly basis but the
     Hotel nonetheless wishes a credit for such payments, the Hotel shall present data to the City
     concerning hours worked and health contributions made, and the City Manager or his designee shall
28   estimate the value of such benefits on an hourly basis."

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

Plaintiffs also argue that the City is impermissibly injected into ongoing labor negotiations by virtue of the provision that the City Council can unilaterally determine that Plaintiffs have not complied with Measure C and attach conditions respecting wages hours and working conditions to Plaintiffs' rights to continue to operate their hotels.  *See* Ordinance, § IV.A.[13]  However, the cases on which Plaintiffs rely to support their argument are clearly distinguishable.  *See Golden State Transit Corp. v. Los Angeles*, 475 U.S. 608 (1986) (overturning state law that conditioned grant of state taxicab franchise on settlement of strike with drivers); *Machinists* , 427 U.S. 132 (overturning state law prohibiting employees from refusing to work overtime during collective bargaining negotiations).  In *Golden State*, for example, a taxicab company applied to the City of Los Angeles for renewal of its operating franchise.  While the application was pending, the company's cab drivers went on strike, halting its operations.  The City Council delayed action on the renewal application, allowing it to expire.  During discussion on the application, the Council reached a consensus "for rejection of an extension with a possibility for reopening the issue if the parties settled their labor dispute before the franchise expired . . . ."  *Id.* at 611.  The Supreme Court, applying the *Machinists* doctrine, held the City Council's action illegal.  The Court reasoned that the driver's union had the right to strike and the taxicab company had the right to attempt to hold out long enough to force concessions from the union.  The Court construed the Council's action as improper interference with the on-going struggle and ruled that "the city was preempted from conditioning Golden State's franchise renewal on the settlement of the labor dispute."  *Id.* at 618.

Here, the situation is very different.  Plaintiffs' allegations that the City will use this provision to interfere with the disputes between Plaintiffs and their labor force is pure speculation.  First, Plaintiffs have not alleged that there is an ongoing labor dispute.  Second, this provision is simply an enforcement tool that the City can use to ensure the hotels' compliance with Measure C's requirements short of denying the hotels the permit.  The provision allows a notice and hearing, and specifies that if the City attaches the conditions to the renewal of the permit they must be sufficient

---

[13]   Section IV.A provides: "If after notice and hearing the City Council Finds a Large Hotel has violated its permit requirements, the Council shall revoke such permit or attach conditions to the renewal of such permit sufficient to remedy past violations and prevent future violations."

1    to remedy past violations and prevent future violations of Measure C.  It does not provide that the

2    conditions must be such as to force the hotels' dispute with their labor force, or to deny them an

3    economic weapon such as an ability to wait out a strike.  Because Plaintiffs have not shown that

4    Measure C imposes restrictions on labor and management's "'weapons] of self-help'" that were left

5    unregulated in the NLRA," Plaintiffs have not demonstrated that Measure C is likely to be

6    preempted by the NLRA under the *Machinists* doctrine.

7

8                      *(b)    Garmon Doctrine*

9             Plaintiffs also argue that Measure C is preempted under the *Garmon* doctrine exception,

10   which "prohibits states from regulating fields that Congress intended to occupy fully through the

11   creation of a continuum between conduct that is either protected or prohibited by the NLRA."

12   *Associated Builders*, 356 F.3d at 987 (citing *San Diego Bldg. Trades Council v. Garmon*, 359 U.S.

13   236, 244 (1959)).  Plaintiffs argue that Section IV.G. of Measure C, which provides "reasonable

14   access" by "any organization assisting employees in the hospitality industry" is preempted by the

15   NLRA under the *Garmon* doctrine because the "determination of the permissible time, place, and

16   manner for labor organizing is . . . indisputably within the NLRB's primary jurisdiction."  Motion at

17   13.  Because Plaintiffs have not demonstrated that they have standing to challenge the reasonable

18   access provision and they do not argue that any other provision is preempted by the *Garmon*

19   doctrine, they have not demonstrated that Measure C is likely to be preempted by the NLRA under

20   the *Garmon* doctrine.

21                      ii.    Preemption by the Employment Retirement Income Security Act of 1974

22            Neither party disputes that the health plans provided by Plaintiffs to their employees are

23   covered under the Employment Retirement Income Security Act of 1974 ("ERISA").  ERISA

24   "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee

25   benefit plan . . . ."  29 U.S.C. § 1144(a).  The phrase "relate to" has been interpreted to cover state

26   laws that contain either a "reference to" or a "connection with" a benefit plan covered by ERISA.

27   *Cal. Div. of Lab. Standards v. Dillingham*, 519 U.S. 316, 324 (1997).  The "reference to" prong

28   "applies where the state law in question either acts 'immediately and exclusively' upon an ERISA

plan or the existence of such a plan is 'essential' to the law's operation." *Associated Builders*, 356 F.3d at 984 (citing *Dillingham*, 519 U.S. at 325). The "connection with" prong applies to a state law "if it falls outside the scope of state laws that Congress understood would survive ERISA or if its effect is to bind ERISA plans." *Id.* However, Measure C does not relate to any employee benefit plan because it contains neither a "reference to," nor a "connection with" a benefit plan as those terms have been defined by case law.

The only mention of the benefit plans in Measure C is contained in Section I.A.3 which defines "compensation" for purposes of the Ordinance to include "wages (or salary) and health benefits." Ordinance, § I.A.3. The "reference to" prong does not apply to Measure C because the Ordinance does not work "immediately and exclusively" upon Plaintiffs' ERISA plans, and the existence of such plans is not essential to Measure C's operation. For example, Plaintiffs can comply with Measure C by providing minimum compensation of at least nine dollars per hour in wages alone. *See* Ordinance, § I.A.3 ("'Compensation' shall be defined herein as wages (or salary) and health benefits. If employer contributions for health benefits are not paid on an hourly basis *but the Hotel nonetheless wishes a credit for such payments*, the Hotel shall present data to the City concerning hours worked and health contributions made . . . .") (emphasis added).

Plaintiffs argue that, pursuant to *Associated Builders & Contractors, Golden Gate Chapter, Inc. v. Baca*, 769 F. Supp. 1537, 1547 (N.D. Cal. 1991), an ordinance that requires the calculation on a regular basis of the wages and benefits paid to individual workers is preempted by ERISA. Defendant responds that *Baca* is no longer authoritative, in part due to the Ninth Circuit ruling in *WSB Elec., Inc. v. Curry*, 88 F.3d 788 (9th Cir. 1996), in which the circuit rejected an ERISA preemption challenge to a prevailing wage law. The court reasoned that "regardless of how [employers] write their ERISA plans, or even whether they have ERISA plans at all, they must pay the prevailing wage, and they may do so through some combination of cash and benefits." *Id.* at 796. This proposition was reaffirmed by the Ninth Circuit in *Associated Builders*, 356 F.3d at 986. Here, regardless of whether Plaintiffs have ERISA plans, and how they write their plans, the Ordinance mandates them to pay the minimum wage of $9 per hour and the average minimum wage of $11 per hour. They may pay the wage through some combination of cash and benefits. Measure

United States District Court

For the Northern District of California

1  C does not require Plaintiffs to modify their benefit plans.  The choice of amount and type of

2  benefits remains with Plaintiffs.  Measure C does not tell Plaintiffs how to write their ERISA plans

3  or conditions some requirement on how they write their ERISA plans.  Consequently, the fact that

4  Measure C § I.A.3 allows for the incorporation of both wages and health benefits to meet the

5  compensation requirements does not mean that the Ordinance relates to an employee benefit plan

6  and therefore is preempted by ERISA.  *See WSB*, 88 F.3d at 796 (finding no ERISA preemption

7  where the law mandated that employers paid prevailing wage through some combination of cash and

8  benefits).  Accordingly, Plaintiffs have not demonstrated that Measure C is likely to be preempted

9  by ERISA.

10               iii.    Conflict with California Wage-and-Hour Law

11         The California Constitution allows cities and counties to make and enforce ordinances not in

12  conflict with general laws.  Cal. Const., Art. XI § 7.  State law will preempt local legislation if the

13  local legislation duplicates, contradicts, or enters an area which is fully occupied by general law.

14  *Sherwin-Williams Co. v. City of Los Angeles*, 4 Cal. 4th 893, 897-8 (1993) (internal citations

15  omitted).  "Local legislation is 'duplicative' of general law when it is coextensive therewith.

16  [Citation omitted.]  Similarly, local legislation is 'contradictory' to general law when it is inimical

17  thereto.  [Citation omitted.]  Finally, local legislation enters an area that is "fully occupied" by

18  general law when the Legislature has expressly manifested its intent to 'fully occupy' the area. . . ."

19  *Id.*

20         California Labor Code § 1205(b) provides that "[n]othing in [the chapter entitled 'Wages,

21  Hours and Working Conditions . . .'] shall be deemed to restrict the exercise of local police powers

22  in a more stringent manner."  Thus, California state law expressly contemplates further wage

23  regulation by individual localities, demonstrating that the Legislature has expressly manifested its

24  intent not to "fully occupy" the area.  It, therefore, follows that California law preempts Measure C

25  only if it is "duplicative" or "contradictory" to the general law.

26         Plaintiffs do not argue that Measure C is duplicative of state law; rather, they argue that

27  Measure C is contradictory to four areas of California state law: (1) the lower minimum wage for

28  "learners"; (2) the credit for meals and lodging; (3) the impact of Measure C's minimum average

United States District Court

For the Northern District of California

1  compensation rate on the state minimum-wage law; and (4) the concepts of quantity of work versus

2  time worked.

3  As the California Supreme Court explained in *Sherwin-Williams*, "local legislation is

4  "contradictory" to general law when it is inimical thereto," 4 Cal. 4th at 897, such as when the local

5  legislation penalizes conduct which the state law expressly authorizes, or purports to permit conduct

6  which state law forbids. *Bravo Vending v. City of Rancho Mirage*, 16 Cal. App. 4th 383, 397

7  (1993). Plaintiffs first argue that state law explicitly permits a lower minimum rate for "learners,"

8  which is eliminated by Measure C's minimum compensation rate that applies equally to all

9  employees, whether or not they are "learners." Motion at 17. *See also* Cal. Code Regs. tit. 8, §

10  11050.4(A).[14] Defendant, on the other hand, argues that state law does not require employers to hire

11  "learners," so any impact on their hiring because of the increased compensation rate is not a conflict

12  but rather an unfortunate side-effect of Measure C's minimum compensation requirements.

13  Opposition at 18-19. Defendant is correct. The California "learners" law allowing lower minimum

14  wage for learners does not conflict with Measure C's requirement that all employees subject to the

15  Ordinance must be paid at least $9.00 per hour. The Ordinance neither penalizes the conduct state

16  law expressly authorizes, nor permits conduct that state law forbids. It simply sets the bar higher

17  which is allowed by California Labor Code § 1205(b). *See Gilbert v. City of San Jose* (2003) 114

18  Cal.App.4th 606, 616 (local gaming ordinance was not preempted by state Gambling Control Act

19  where legislature specifically allowed local governments to promulgate more stringent local

20  controls). This is particularly true in light of California's public policy, which favors the full

21  payment of wages for all hours worked. *See Armenta v. Osmose, Inc.* (2005) 135 Cal.App.4th 314,

22  324 ("California's labor statutes reflect a strong public policy in favor of full payment of wages for

23  all hours worked."). This policy is demonstrated by the fact that California law limits the

24  subminimum wage to be paid to "learners" for the first 160 hours (approximately 20 days), whereas

25

26  [14]  Section 11050.4(A), which applies to all persons employed in the public housekeeping
industry, provides in pertinent part: "Every employer shall pay to each employee wages not less than
27  . . . six dollars and seventy-five cents ($6.25) per hour for all hours worked effective January 1,
2002, except: LEARNERS: Employees during their 160 hours of employment in occupations in
28  which they have no previous similar or related experience, may be paid not less than 85 per cent of
the minimum wage rounded to the nearest nickel."

United States District Court

For the Northern District of California

1   its federal counterpart law allows the subminimum wage to be paid for the first 90 days.  Thus,

2   California "learners" law simply sets a floor for the regulation of wage requirements.  Measure C

3   furthers the goal of the state law by providing additional protections to the large hotels' employees in

4   the City of Emeryville.  A different result would be warranted if Measure C imposed additional

5   requirements that undermined the purpose behind the state law.  Thus, Plaintiffs have not

6   demonstrated that Measure C is likely to be found contradictory to California state law with respect

7   to "learners."

8       Next, Plaintiffs claim that Measure C conflicts with the IWC Wage Orders which provide

9   that employees may agree to receive meals and lodging as a credit toward their minimum-wage

10  compensation based on specified rates and values.  Plaintiffs argue that Measure C conflicts with

11  this provision because it allows the minimum wage compensation under the Ordinance to be met

12  solely through a combination of cash and health benefits.  Defendant responds that the state law does

13  not apply to anything beyond the state-imposed minimum wage of $6.75 per hour.  Neither parties,

14  nor the amici provide any legal authorities with respect to this issue.  It is Plaintiffs' burden to make

15  a clear showing of entitlement to injunctive relief.  Because Plaintiffs have not carried their burden

16  with respect to this provision, the Court is unable to conclude on this record that the IWC Wage

17  Orders are likely to preempt Measure C.

18      Plaintiffs also argue that the minimum average compensation rate contained in Measure C is

19  contradictory to the state minimum-wage law because it "obligates employers to increase the number

20  of employees at the high end of its current compensation range while decreasing (through

21  termination or attrition) the number of lower-paid workers on its payroll."  Motion at 17 (emphasis

22  omitted).  Plaintiffs focus on the purpose behind the state minimum-wage law, and argue that the

23  minimum average compensation rate is "at odds with the spirit and purposes of CA's current

24  minimum-wage law."  Motion at 18.  While the "spirit" of the state minimum-wage law provides

25  guidance in discerning the intent of legislature, it is not what the law "expressly authorizes, or . . .

26  forbids."  *Bravo Vending*, 16 Cal. App. 4th at 397.  Consequently, it is not, alone, a valid basis on

27  which to find a conflict.  Moreover, more stringent compensation requirements are expressly

28  permitted under California Labor Code § 1205(b).

26

**United States District Court**
For the Northern District of California

1    Further, Plaintiffs argue that it is nearly impossible for them to maintain the average

2  compensation rate when independent contractors may hire people at various rates, thereby forcing

3  either Plaintiffs or other independent contractors to adjust their practice of hiring and firing

4  employees to maintain the average compensation higher than the required minimum of $11 per hour.

5  However, Plaintiffs fail to explain how the challenge in coordinating employee pay by third-party

6  contractors amounts to a contradiction between Measure C and California state law.

7    The final argument set forth by Plaintiffs is that a conflict exists between Measure C's

8  requirement of $16.50 per hour for any room cleaner who cleans a prorated total of more than 625

9  square feet per hour.  Plaintiffs argue that such a premium for quantity of work is contradictory to

10  California overtime law which places a premium solely on the number of hours worked.  California

11  Labor Code § 510 states that "[a]ny work in excess of eight hours in one workday . . . shall be

12  compensated at the rate of no less than one and one-half times the regular rate of pay for an

13  employee."  Consequently, if Plaintiffs' employees worked over eight hours, regardless of the

14  quantity of the work, they would be afforded overtime pay under state law.  Measure C, on the other

15  hand, provides for overtime pay when employees are required to clean over 5,000 square feet even if

16  employees work only eight hours.  Measure C does not alter the overtime premium payment for the

17  number of hours worked, it only adds to as an occasion for which overtime premium must be paid

18  those instances in which an employee is required to clean over 5,000 square feet.  Providing

19  overtime in such a situation is not expressly forbidden or required under state law.  Consequently, no

20  contradiction is created.

21          iv.    <u>Conflict with California's At-Will Employment</u>

22    Plaintiffs' final argument regarding preemption of Measure C is that the 90-day stay on

23  terminations following a change in ownership of the hotel or an employer within the hotel conflicts

24  with the at-will employment provision of California law.  The Court has found that Plaintiffs do not

25  have standing to challenge the 90-day stay provision. *See supra.*  Accordingly, Plaintiffs cannot

26  succeed on the merits with respect to this claim.

27          v.    <u>Conflict with Constitutional Privacy Rights</u>

28    Article I, section 1 of the California Constitution explicitly protects an individual's right to

27

United States District Court

For the Northern District of California

1    privacy against the disclosure of private and confidential information by both private and

2    governmental bodies.  Cal. Const. Art I, sect. 1; *see also Gilbert v. City of San Jose*, 114 Cal. App.

3    4th 606, 613 (2003).  Privacy rights are subject to a balancing test, and "may be abridged when . . .

4    there is a 'compelling' and opposing state interest."  *Bd. of Trs. v. Super. Ct.*, 119 Cal. App. 3d 516,

5    525 (1981).

6         Plaintiffs argue that the City cannot articulate any compelling need for the private employee

7    information, and that such information is not necessary to ensure Plaintiffs' compliance with the

8    Ordinance.  Motion at 21.  The Court has found that Plaintiffs cannot assert the rights of their

9    employees.  *See* Section I, *supra*.  Accordingly, Plaintiffs cannot succeed on the merits with respect

10   to this claim.

11                    vi.    Unconstitutionally Vague and Violates Due Process

12        "It is a basic principle of due process that an enactment is void for vagueness if its

13   prohibitions are not clearly defined."  *Greynard v. City of Rockford*, 408 U.S. 104, 108 (1972).  To

14   survive a vagueness challenge, the statute must give the person of ordinary intelligence a reasonable

15   opportunity to know what is prohibited, so that he may act accordingly.  *Id.*  The statute must also

16   provide explicit standards for those who apply it so that arbitrary and discriminatory enforcement is

17   prevented.  *Id.*  However, "a party challenging the facial validity of an ordinance on vagueness

18   grounds outside the domain of the First Amendment must demonstrate that 'the enactment is

19   impermissibly vague in all of its applications.'"  *Hotel & Motel Ass'n of Oakland v. City of Oakland*,

20   344 F.3d 959, 972 (9th Cir. 2003) (citing *Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*,

21   455 U.S. 489, 495 (1982)).  In addition, economic regulations are "subject to a less strict vagueness

22   test because its subject matter is often more narrow and because businesses . . . can be expected to

23   consult relevant legislation in advance of action."  *Hoffman Estates*, 455 U.S. at 489.  Because of the

24   advanced warning associated with legislative actions, "due process is [generally] satisfied when the

25   legislative body performs its responsibilities in the normal manner prescribed by law.'"  *Hotel &*

26   *Motel Ass'n*, 344 F.3d at 969 (citing *Halverson v. Skagit County*, 42 F.3d 1257, 1260 (9th Cir. 1995).

27        Plaintiffs argue that Measure C is unconstitutionally vague because the ordinance (1) uses

28   the terms "large hotel" and "hotel" interchangeably; (2) fails to identify how Plaintiffs are supposed

28

to avoid liability for employees not under their control (*i.e.*, who work for independent contractors); (3) does not explain what constitutes "reasonable access" to Plaintiffs' workforce; (4) is unclear how to reconcile the average compensation requirements with existing state laws for calculating regular and overtime rates; and (5) neglects to provide standards for the City Council to apply in ascertaining non-compliance. Plaintiffs assert that these ambiguities, in connection with the penalties for non-compliance identified in Measure C, create an unconstitutional ambiguity and a violation of due process. Motion at 22-23.

Plaintiffs admit that the Ordinance applies to them because they are hotels which have over 50 guest rooms. Motion at 22; Ordinance, § III.1. Thus, Plaintiffs cannot complain that the Ordinance's allegedly vague interchangeable use of the terms "hotel" or "large hotel" is causing them any harm that would be redressed by favorable decision in this litigation. *See Young v. American Mini Theaters, Inc.*, 427 U.S. 50, 59 (1976) (plurality opinion) (holding that where ordinance is unquestionably applicable to a litigant, any vagueness has not affected them and does not violate due process); *Basiardanes v. City of Galveston*, 682 F.2d 1203, 1210 (5th Cir. 1982) (plaintiff lacked standing to challenge the terms of the ordinance for vagueness because the terms clearly applied to him); *Parker v. Levy*, 417 U.S. 733, 756 (1974) ("One to whose conduct the statute clearly applies may not successfully challenge it for vagueness."); *United States v. Mazurie*, 419 U.S. 544, 550 (1975) ("It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand."). Because the Ordinance clearly applies to them, Plaintiffs have not demonstrated that they have standing to challenge it for vagueness. In addition, Plaintiffs have not demonstrated that they have standing to assert that the Ordinance is vague as applied to others. *See Basiardanes*, 682 F.2d at 1210 ("Ordinarily, a litigant to whom a statute clearly applies lacks standing to argue that the statute is vague as to others.").

vii.    Violation of Equal Protection

The relevant test to determine whether Measure C violates equal protection is whether a "rational basis" exists for the classification of "Hotels" set forth under Measure C. *See Burlington Northern R.R. Co. v. Dept. of Pub. Serv. Regulations*, 763 F.2d 1106, 1109 (9th Cir. 1985). This test

1  is applied because the case "involves 'social and economic policy' and neither targets a suspect class

2  nor impinges upon a fundamental right."  *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1154

3  (9th Cir. 2004) (citing *FCC v. Beach Commun., Inc.*, 508 U.S. 307, 313 (1993)).  Furthermore, "the

4  rational-basis inquiry is a very lenient one."  *RUI One*, 371 F.3d at 1156.  To determine whether this

5  standard is met, the Court only needs to determine if there are plausible reasons for the legislative

6  action.  *Id.* at 1154 (citing *Beach Commun.*, 508 U.S. 313-4).

7  In the Findings section of Measure C, there are a number of rationales set forth in support of

8  the Ordinance, including the fact that "large hotels are better able to afford the proposed conditions,"

9  "many large hotels are already meeting the employment conditions required by this Ordinance," the

10  ordinance is similar to California Labor Code sections already protecting janitors, and "large hotels

11  are generally less likely to respond by closing or reducing employment."  Ordinance, § V.

12  Plaintiffs argue that Measure C arbitrarily imposes its regulations on hotel operators with

13  more than 50 guest rooms and their hotel restaurants, while leaving other businesses with more

14  employees and greater revenues exempt.  Motion at 23.  Plaintiffs conclude that this imposition is

15  not supported by a "legitimate public-policy rationale."  Any group or individual "attacking the

16  rationality of the legislative classification ha[s] the burden 'to negative every conceivable basis

17  which might support it.'"  *RUI One*, 371 F.3d at 1155 (citing *Beach Commun.*, 508 U.S. at 315)

18  (brackets in original).  Plaintiffs fail to carry that burden.  Although all businesses are not covered

19  under Measure C, "the legislature must be allowed leeway to approach a perceived problem

20  incrementally...[and] select one phase of one field and apply a remedy there [while] neglecting the

21  others."  *RUI One*, 371 F.3d at 1155 (citing *Beach Commun.*, 508 U.S. at 316; *William v. Lee*

22  *Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955)).  This is the preferred approach because the

23  Constitution presumes that "even improvident decisions will eventually be rectified by the

24  democratic process and . . . judicial intervention is generally unwarranted no matter how unwisely

25  we may think a political branch has acted."  *Retail Industry*, – F.Supp. –, 2006 WL 2007654 at 15.

26  Under similar circumstances, no violation of the Equal Protection Clause has been found, even when

27  an ordinance specifically targeted only one company.  *See id*. at 13-16.  Consequently, Plaintiffs are

28  unlikely to successfully assert that Measure C violates an Equal Protection Clause.

**United States District Court**

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT Plaintiffs' Motion for Preliminary Injunction is DENIED.

IT IS FURTHER ORDERED THAT Defendant's request for judicial notice is GRANTED as to Exhibit A, and DENIED as to Exhibit B.

IT IS FURTHER ORDERED THAT Defendant's objections to evidence and supplemental evidence are SUSTAINED in part and OVERRULED in part.

IT IS SO ORDERED.

Dated: 8/22/06

SAUNDRA BROWN ARMSTRONG
United States District Judge

31