# APPENDIX A - Attachment to Amici Brief

<u>Ill. Hotel Ass'n v. Ludwig</u>

Ill. Cir. Ct. Case No. 05CH13796

(July 28, 2006)

HELLOON SEUTORTONLHINLD I           002/034

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT -- CHANCERY DIVISION

THE ILLINOIS HOTEL AND LODGING  )
ASSOCIATION, an unincorporated      )
association,                            )
          Plaintiff,        )
                            )
                            )     No. 05CH13796
         v.              )
                            )
ART LUDWIG, DIRECTOR FOR THE    )    Judge James Henry
ILLINOIS DEPARTMENT OF LABOR,   )    Cal. 6
AND UNITE HERE LOCAL 1,        )
                            )
          Defendants.      )

## MEMORANDUM OPINION AND ORDER

The matters before the Court are Cross Motions for Summary Judgment brought by Plaintiff, The Illinois Hotel and Lodging Association ("IHLA") and Defendants, Art Ludwig, Director of the Illinois Department of Labor, and Unite Here Local 1 (hereinafter referred to as "Defendants"), pursuant to 735 ILCS 5/2-1005. These matters having come before the Court on June 1, 2006; the Court having considered the briefs and oral arguments in connection with the motions; the Court hereby enters the following Memorandum Opinion and Order:

I.    **FACTS**

A.    **Procedural History**

On August 16, 2005, IHLA filed a Complaint for Declaratory Judgment and Injunctive Relief against Defendant Art Ludwig ("Ludwig"). The action claims that the Hotel Room Attendant Amendment, Public Act 94-0593, 820 ILCS 140/3.1 (hereinafter "the Amendment") to the One Day Rest in Seven Act, 820 ILCS 140/1 *et seq.*, ("the Act"), violates the United States and the Illinois constitutions and is preempted by the National Labor Relations Act ("NLRA"). On August 18, 2005, the Court issued a Temporary Restraining Order ("TRO") that enjoined the Illinois Department of Labor from enforcing or implementing the Room Attendant Amendment. On November 1, 2005 the Court granted Defendant Unite Here Local 1 ("Local 1") leave to intervene.

## B. THE HOTEL ROOM ATTENDANT AMENDMENT

The Amendment to the Act requires hotel employers located in a county with a population greater than 3,000,000 to provide hotel room attendants with two paid fifteen-minute rest breaks and one thirty-minute meal period in each workday that a hotel room attendant works seven hours. 820 ILCS 140/3.1(b)-(c). In addition, the Amendment mandates that hotel employers provide a room with adequate seating and tables to allow hotel room attendants to take breaks "in a clean and comfortable environment." 820 ILCS 140/3.1(d). The break room must also provide clean drinking water without charge. Id. Furthermore, under the Amendment hotel employers who discipline or terminate their hotel room attendants are subject to a rebuttable presumption that the termination was in retaliation for the hotel room attendants' exercise of his or her rights under the Amendment. 820 ILCS 140/3.1(g). To rebut the presumption, a hotel employer must prove that the sole reason for terminating, demoting, or penalizing the hotel room attendant, was a legitimate business reason Id.

Additionally, a hotel employer that fails to comply with the Amendment must pay the hotel room attendant three times the hotel room attendant's regular hourly rate for each workday during which the prescribed breaks were not provided. 820 ILCS 140/3.1(f). Under the Amendment, a hotel room attendant is also entitled to a private right of action and may be entitled to damages, back pay, reinstatement and/or injunctive relief. 820 ILCS 140/3.1(h).

## II. ANALYSIS

The IHLA makes the following arguments in its Motion for Summary Judgment: (1) the Amendment constitutes special legislation in violation of the Illinois constitution (Ill. Const. 1970, art. IV, § 13); (2) the Amendment violates equal protection under the United States and the Illinois constitutions (Ill. Const. 1970, art. I, § 2; U.S. Const., amend. XIV); and, (3) the Amendment is preempted by the National Labor Relations Act (the "NLRA")(29 U.S.C. § 151, *et seq*.). Defendants argue the contrary positions in their Motion for Summary Judgment.

## A. SPECIAL LEGISLATION

The IHLA argues the Amendment constitutes special legislation in violation of the Illinois constitution. The IHLA notes the purpose of the Amendment is to purportedly protect the workers of the State of Illinois. However, under the rational basis test, the IHLA asserts there is no rational basis for allegedly protecting only employees who work in Cook County, versus hotel room attendants who work in the remainder of Illinois. The IHLA also claims there is no rational basis for limiting the benefits to only hotel room attendants, while other employees within the same department, such as linen room workers, house persons, or night cleaners, are not afforded these same benefits.

The Court agrees the appropriate standard for review is the rational basis test because the statute under consideration does not affect a fundamental right or involve a suspect classification. See In re Petition of the Village of Vernon Hills, 168 Ill. 2d 117, 123 (1995). The question before the Court is premised on the special legislation clause found in the Illinois Constitution of 1970, which provides,

> The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination. Ill. Const. Art. IV, § 13.

The ban on special legislation in Illinois dates back to the nineteenth century when the courts responded to the General Assembly's abuse of the legislative process by granting special charters for various economic entities. See Best v. Taylor Machine Works, 179 Ill. 2d 367 (1997). Apparently recognizing the value of the special legislation prohibition originally found in the Constitution of 1870, the framers of the Illinois Constitution of 1970 retained the clause, with only minor modifications. See Anderson v. Wagner, 79 Ill. 2d 295, 314 (1979). In Bridgewater v. Hotz, 51 Ill. 2d 103 (1972), the Illinois Supreme Court construed the special legislation clause of the Constitution of 1970, stating that the legislature no longer had the discretion to determine whether a general law could be made applicable, enlarging the scope of judicial review. However, the traditional equal protection test still applied: If a reasonable basis exists to differentiate between a class to which a law is applicable and a class to which it is not, the General

Assembly may constitutionally classify persons and objects for the purpose of legislative regulation and control. Anderson, 79 Ill. 2d at 315.

The distinction between special and local laws may be stated as follows:

> A local law is one which applies only to the government of a portion of the territory of the state, and a special law is one which applies only to a portion of the state-its people, its institutions, its economy-in some sense other than geographical. Best, 179 Ill.2d at 392 (quoting G. Braden & R. Cohn, The Illinois Constitution: An Annotated & Comparative Analysis 206-07 (1969)) (emphasis added).

In analyzing this question, the Court must determine "first whether the statutory amendments discriminate in favor of a select group and, if so, whether the classification created by the statutory amendments is arbitrary." See Allen v. Woodfield Chevrolet, Inc., 208 Ill. 2d 12 (2003). However, the Court begins its analysis with the presumption that the Amendment is constitutional, as the rational basis review is highly deferential to the legislature. See Committee for Educational Rights v. Edgar, 174 Ill. 2d 1, 33, (1996).

To support its position that the Amendment constitutes special legislation, the IHLA cites to In re Belmont Fire Protection District, 111 Ill. 2d 373 (1986) and In re Petition of the Village of Vernon Hills, 168 Ill.2d 117 (1995). Defining special legislation, In re Belmont Fire Protection District states "a special law confers 'some special right, privilege or immunity or impose[s] some particular burden upon some portion of the people of the State less than all.'" 111 Ill. 2d at 379 (quoting People v. Wilcox, 237 Ill. 421, 424 (1908)). The Illinois Supreme Court outlined a two-prong test to determine whether a statute is general in nature, but attacks a local problem, or whether the statute is arbitrary and provides only one class special and exclusive favors. Id. at 380. The Court explained that for a statutory classification to be valid, "the classification must be based upon a rational difference of situation or condition found to exist in the persons or objects upon which the classification rests." Id. at 380. In addition, the classification must bear a rational relation to the evil to be remedied and the purpose to be achieved by the legislation. Id.

Both In re Belmont Fire Protection District and In re Petition of the Village of Vernon Hills are factually identical and involve the constitutionality of legislation

ᴵᴸᴸᴵᴺᴼᴵˢ  ᴮᴸᴼᵀᴼᴿᴵᴼᴿᴷᴱᴺᴺᴱᴰᵞ

intended to consolidate fire protection services in certain municipalities. In re Petition of the Village of Vernon Hills, 168 Ill.2d at 125. The Court will focus its analysis on In re Belmont Fire Protection District. Specifically, the statute in question provided for the transfer of fire protection districts to other districts in counties having between 600,000 and 1,000,000 citizens. Id. The population restriction effectively limited the law to DuPage County only. Id. at 381. The Court held that no reasonable basis for the population classification existed because DuPage County was not a distinct and separate class for purposes of the legislation. Id. Rather, the Court noted that if a need existed to eliminate purported disadvantages and dangers of multiple fire protection districts serving one municipality, then "the same need to remedy this evil also exist[ed] in other counties as well, regardless of the level of the population of the county." Id. at 382.

The IHLA asserts that like in In re Belmont Fire Protection District, nothing indicates that Cook County hotel room attendants are treated worse, have different duties, or have a job that is distinguishable from the work of hotel room attendants in any other Illinois county. Rather, the IHLA argues that throughout Illinois, hotel room attendants have similar duties: they clean bathrooms, change bed linens, remove dirty linens and towels, vacuum, remove garbage, and replace depleted amenities in the rooms. The IHLA also notes hotel room attendants usually clean a required number of rooms per day. Though this varies by hotel, the IHLA contends hotels with locations both in and outside of Cook County require their attendants to clean roughly the same number of rooms. For example, the IHLA points out Wyndham hotel room attendants in Cook and DuPage Counties must clean 15 to 16 rooms per day. In addition, Holiday Inn Express hotel room attendants in Cook and DuPage Counties must clean 18 rooms per day. Finally, the IHLA lists several other hotel chains that require their hotel room attendants to clean between 12 to 18 rooms per day, both in and outside of Cook County.

In contrast, Defendants assert that In re Belmont Fire Protection District is distinguishable from the present action. The Court in In re Belmont Fire Protection District rejected the State's argument that the rational basis for the population classification was the substantial rate of population growth in DuPage County. 111 Ill. 2d at 385. Defendants claim the Court held the legislation to be unconstitutional because the State proposed no *other* conceivable bases in support of its classification. Defendants

further note that In re Petition of the Village of Vernon Hills, 168 Ill.2d 117 (1995), is distinguishable on the same grounds. Essentially, Defendants contend the IHLA has cited to cases where the State was unable to offer justification for its population classification. Defendants assert that the present case differs because there are several reasons why Cook County hotels should be the only hotels affected by the Amendment.

The IHLA argues Defendants' attempt to distinguish In re Belmont Fire Protection District and In re Petition of the Village of Vernon Hills is misguided. Rather, the IHLA contends Illinois Courts have regularly found violations of special legislation, even where the party supporting the regulation could enunciate multiple "possible" bases for the legislation. To support this, the IHLA principally relies on In re Petition of the Village of Vernon Hills, Best v. Taylor Machine Works, 179 Ill.2d 373, 378-79 (Ill. 1986), and Grace v. Howlett, 51 Ill.2d 478, 487-89 (Ill. 1972).

The Illinois Supreme Court in Best considered the constitutionality of statutory damage caps on medical malpractice claims. 179 Ill.2d at 390. In holding the statute unconstitutional, the Court relied on the rule that legislative classifications are invalidated under the special legislation clause where they have "an artificially narrow focus" and where they confer a benefit on a particular private group without a reasonable basis. Id. at 395. In addition, the Court cited Grace, noting that multiple legitimate government concerns existed in that case, but "the fact that a problem exists does not permit the adoption of an arbitrary or unrelated means of addressing the problem." Id. at 398. The Court determined the statute in question imposed an arbitrary cap on all damages, without regard to the facts of each case. Id. at 406. Such a law did not alleviate the difficulty in quantifying compensatory damages for noneconomic injuries and created inconsistent and illogical compensation for plaintiffs. Id. at 403. Here, without a rational distinction between the situation facing hotel room attendants within Cook County as compared to those outside of Cook County, the IHLA claims the Amendment is unconstitutional.

Similarly, the Grace Court held a statute limiting recovery for certain automobile accident victims constituted an arbitrary and unreasonable legislative classification. 51 Ill. 2d at 487. The Court noted the legislature expressed "evils" the statute was designed to address, namely the large number of personal injury claims arising from motor vehicle accidents. Id. at 485. The effect of the law limited an injured plaintiff's ability to recover

compensatory damages depending on whether the party using the vehicle was using it for commercial or personal purposes. Id. at 482. The Court held a general law could be made applicable and stated the legislature cannot enact special legislation simply because "'reform may take one step at a time.'" Id. (quoting Williamson v. Lee Optical of OK., Inc., 348 U.S. 483 (1955)).

The IHLA contends these cases are similar to the present case because here, there is no relationship between Cook County demographics, room attendants' needs, and the population classification. As argued in Grace, the IHLA asserts a general law can be made applicable because the Act could be applied to all hotel room attendants in the State of Illinois. In fact, the IHLA conceded in oral argument before the Court that were the Amendment applicable throughout the State rather than only in Cook County, the Amendment would not be special legislation.

Defendants assert that a more general law is not required because many rational bases exist for targeting Cook County. For example, Defendants contend the Legislature could have rationally concluded hotels and motels in Cook County are, on average, larger hotels. Additionally, Defendants claim the Legislature could have rationally concluded that hotels and motels in Cook County are financially healthier due to the large tourism industry in the city of Chicago. Because these are conceivable rationales for the Legislature's action, Defendants argue the Amendment must be upheld.

Furthermore, Defendants claim it was originally the IHLA that convinced the legislature to apply the Amendment to Cook County alone, as the original version of the Amendment applied to all of Illinois. Arguing that the IHLA had "rational" reasons for applying the Amendment to only Cook County, Defendants cite to legislative hearings where the IHLA presented testimony that small hotel operators outside of Chicago would have difficulty coming into compliance with the Amendment's rules. Therefore, Defendants argue the IHLA itself provided the Legislature with plausible reasons for the population classification.

The IHLA retorts the Association lobbied against the Amendment, both as originally written (i.e., applying to all of Illinois) and as ultimately passed, for multiple reasons. The IHLA states a primary reason it lobbied against it was to prohibit Defendant Local 1 from imposing the collectively bargained work rules of its 26 union hotels in

Chicago upon all other Illinois hotels. Thus, the IHLA claims it did not support the Amendment on the grounds that Cook County hotels could better bear the burden of the legislation, as alleged by Defendants.

Defendants also argue the Amendment's population classification is appropriate because other population classifications in Cook County have remained valid based on magnitude and concentration of the problem within the County. Defendants then refer the Court to the large tourism industry in Cook County, the large majority of hotel and motel employees that work in Cook County, and the nearly two-thirds of all Illinois domestic travel expenditures that get spent in Cook County.

Furthermore, Defendants list several cases to support the population classification. Defendants argue Chicago and Cook County are presumed to be different from the rest of Illinois. For example, Defendants cite Village of Shaumburg v. Doyle, 277 Ill. App. 3d 832 (1996) where a statute that prohibited regulation of pesticides by any political subdivision except for counties and municipalities with a population of more than two million, was challenged as an unconstitutional population classification. The court held it was not "unreasonable to presume that large population centers will have the resources, expertise, and will to deal with the regulation of pesticides." 277 Ill. App. 3d at 842. The court noted the issue of pesticides seriously implicated the health and welfare of Illinois residents, warranting such a classification. Id.

In addition, Defendants cite Chicago National Ball Club, Inc. v. Thompson, 108 Ill.2d 357 (1985), where an amendment to the Environmental Protection Act regulated noise pollution from nighttime sporting events in cities with a population in excess of one million. The effect of the amendment prohibited night games at Wrigley Field. Chicago Nat't Ball Club, Inc., 108 Ill.2d at 363. The court held the enactments were within the power and judgment of the legislature. Id. at 365. Though the Cubs argued the enactments would have to apply equally to all stadia in the State, the court found that the equal protection clauses of the Illinois and United States Constitutions do not require uniform treatment in legislative classifications. Id. at 366. Rather, the court noted the legislature "may choose to address itself to what it perceives to be the most acute need." Id. at 367. In addition, addressing the special legislation argument, the court held it could be reasonably anticipated that in an urban setting more people would be affected by the

noise from spectators, neighborhood streets would be busier, and thus, potentially more dangerous to residents. Id. at 370. Finally, the court found a rational basis existed in the concern that there would be less open space in an area with a highly concentrated population to serve as a buffer zone from noise. Id.

Defendants claim Hearne v. Board of Education of the City of Chicago, 185 F.3d 770 (1999), also evidences a constitutional geographic classification similar to the present case. In that case, the court addressed whether there was a rational basis for Chicago-only legislation designed to reform the Chicago public school system. Hearne, 185 F.3d at 774. The court held that there was a rational basis for the General Assembly's decision to single out Chicago, due to a system known to be "in the throes of an 'education crisis.'" Id. at 772, 775.

However, the IHLA argues that each of these cases can be distinguished. First, in Village of Shaumburg, the IHLA notes the court specifically stated the classification did not result in a "'special benefit or exclusive privilege ... to the exclusion of others similarly situated.'" 277 Ill. App. 3d at 842 (quoting Cutinello v. Whitley, 161 Ill.2d 409 (1994)). Second, in Chicago Nat't Ball Club, Inc., the IHLA argues the classification was reasonably related to the targeted evil because in no other part of the State did a similar stadium exist in the heart of a highly populated area. In contrast, the IHLA claims hotel room attendants across Illinois face the same conditions of employment. Third, in Hearne, the court found the uniquely dire straights of the Chicago public school system as compared to other school districts necessitated greater flexibility in the termination of non-performing teachers. Therefore, according to the IHLA, the population classification did not result in an added benefit to a class of people, but rather, teachers in Cook County were subject to reduced job security.

Distinguishing these cases further, the IHLA argues that in the present case, the Amendment provides greater benefits to hotel room attendants in Cook County to the exclusion of those outside of Cook County, who face the same or possibly even greater workloads than the hotel room attendants in Cook County. In sum, because the population classification here is "completely arbitrary," the IHLA claims it constitutes special legislation.

Contrary to the IHLA's position, Defendants claim the Legislature could have rationally concluded that hotels and motels in Cook County can better afford new rest break regulations. This, Defendants assert, is a rational basis for classification, citing to Ward & Gow v. Krinsky, 259 U.S. 503 (1922). In Ward, the Supreme Court of the United States held that New York's Workman's Compensation Law was constitutional under the Fourteenth Amendment, which required employers of "four or more workman or operatives regularly, in the same business or in or about the same establishment," to pay for insurance. 259 U.S. at 513, 516. The Court in Ward held that placing the burden of loss on the employer of four or more employees was not arbitrary because such employers were better equipped to pay than the disabled or injured employee or his or her dependants. Id. at 517. Defendants compare this rationale to the present case, arguing that the population classification is not arbitrary because hotels in Cook County are better equipped to pay for the Amendment's requirements than hotels in smaller communities.

In response, the IHLA notes there is no size limitation in the Amendment. Therefore, the IHLA argues the justifications proffered by Defendants, that Cook County hotels are better equipped to pay for the Amendment's requirements, is misplaced. The IHLA refers the Court to several small hotels and Bed and Breakfast establishments located in Cook County that would be affected by the Amendment. The IHLA contends it has never justified the Amendment, as it asserts small hotels should be spared from this legislation. Therefore, the IHLA argues it has continually criticized the legislation for imposing the Chicago unionized work rules on many non-union hotels.

The Court acknowledges the IHLA's reference to the original Amendment, which did not have a population classification. Because the Court may consider legislative history to determine whether a statutory classification was arbitrary, it is important to note the concern for hotel room attendants was not originally limited to Chicago hotels. See Allen v. Woodfield Chevrolet, Inc., 208 Ill. 2d at 25. Rather, the concerns expressed by the Legislature focused generally on all hotel room attendants' ability to take breaks in an industry where each individual must clean a quota of rooms per day. Hearing on H.B. 3485 Before the House Labor Committee, 2005 Leg. (IL. 2005) (statement of Del. John Fritchey). The Legislature noted the conditions of hotel room attendants, who often do not have time to rest or even stop for a meal. Id. Even so, testimony in the legislative

history noted the larger concentration of hotels and a larger tourism industry in Chicago was a plausible reason to limit the Amendment to suburban Cook County. See Hearing on H.B. 3485 Before the Senate Labor Committee, 2005 Leg. (IL. 2005) (statement of Henry Tamarin, President of Local 1).

In line with this argument, Defendants contend that though the Legislature acted rationally in targeting the Amendment to Cook County only, the Legislature also has authority to proceed incrementally. Defendants again cite language from Chicago Cubs National League Ball Club, where the court stated, "[t]he legislature need not choose between legislation against all evils of the same kind or not legislating at all. Instead, it may address itself to what it perceives to be the most acute need." 108 Ill. 2d at 367.

Defendants then cite a line of cases where legislation was determined constitutional even when it applied to a particular "evil" only. For example, in Cutinello v. Whitley, 161 Ill.2d 409, 414 (1994), the Illinois Supreme Court upheld the County Motor Fuel Tax Law, which taxed fuel in DuPage, Kane, and McHenry Counties only. Recognizing that a classification can be based on population, the Court stated legislation "is not rendered special simply because it operates in only one part of the State." Cutinello, 161 Ill.2d at 418. The Court then explained its deference to the Legislature, due to the Legislature's need to address different concerns throughout the State. Id. at 420. In noting the greater need for transportation financing in the affected counties, the Court stated,

> [c]lassification 'requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact [that] the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration.'" Id.

Similarly, the statistics presented to the Court show Cook County to have the highest tourism rates in the State with the highest concentration of large hotels, accounting for nearly two-thirds of all Illinois domestic travel expenditures. The Amendment's targeted evil is the right for hotel room attendants to have time to rest and eat a meal during their shift. In line with Cutinello, it is presumed the Legislature did

their duty in surveying the conditions in the different counties of the State before enacting classification legislation that applies to only hotel room attendants in Cook County. See id.

Next, Defendants cite Jasper v. Chicago National League Ball Club, Inc., 309 Ill. App. 3d 124 (1999), where a man struck by a foul ball during a Chicago Cubs baseball game sued, arguing the Baseball Act was unconstitutional special legislation. The Baseball Act shifts the expense of injury caused by foul balls to spectators, unless the injury is caused by the owner's willful and wanton conduct. Jasper, 309 Ill. App. 3d at 127. The plaintiff argued the Baseball Act singled out baseball for special treatment. Id. at 128. However, the court upheld the legislation as constitutional, reasoning that even though other sports may present similar dangers, "'[t]he legislature need not choose between legislating against all evils of the same kind or not legislating at all.'" Id.

Lastly, Defendants cite Alamo Rent-A-Car v. Ryan, 268 Ill. App. 3d 268 (1994), which addressed the constitutionality of a section in the Illinois Motor Code. The particular section at issue imposed a $200 cap on damages a car rental company could recover from a rental car driver for negligently causing damage to a rental vehicle. Alamo Rent-A-Car, 268 Ill. App. 3d at 270. The law distinguished between short and long term leases in that it did not apply to leases over 30-days. Id. at 276. The court upheld the law, stating the legislature could have rationally concluded that long-term car rental customers are more sophisticated consumers. Id.

These cases recognize the Legislature's ability to target a particular subset or population under certain circumstances. Here, the Legislature has chosen to target hotel room attendants in Cook County rather than all hotel room attendants throughout the State. Apparently, one rational is the high tourism industry in Cook County, which is not found in other parts of Illinois. Even so, under the rational basis test, the court may hypothesize reasons for legislation and does not have to rely on the reasons that actually motivated the legislative action. See Alamo Rent-A-Car, 268 Ill. App. 3d at 273. Therefore, once any reasonable basis for the passage of the Amendment is articulated, the Court must deem the legislation constitutional. See Ball v. Village of Streamwood, 281 Ill. App. 3d 679, 683 (1996).

Defendants need only "posit plausible reasons for the legislation that are within the legitimate goals of government," and they have done so. See Ball, 281 Ill. App. 3d at 683. The Amendment targets an evil, i.e., the intense workload of hotel room attendants, in an area with the largest concentration of those workers. The Court acknowledges that hotel room attendants in other Illinois counties may also have a need for this type of legislation because all hotel room attendants are required to clean roughly the same quota of rooms per day. However, because rational reasons exist to limit the law to Cook County only, the Court determines the legislation constitutional.

A final argument posited by the IHLA is that no rational basis exists to target a small portion of hotel industry employees, hotel room attendants, to the exclusion of other hotel employees. However, due to the IHLA's above admission, that were the Amendment applicable State-wide it would not be special legislation, the IHLA has essentially conceded this point. Nonetheless, the Court will provide a summary of the parties' briefed arguments.

The IHLA cites to Allen v. Woodfield Chevrolet, Inc., 208 Ill. 2d 12 (2003), to support their argument. In Allen, the court struck down certain amendments that required a plaintiff suing a single group of defendants, new and used vehicle dealers, to meet notification requirements not normally necessary for bringing an action against other types of businesses. 208 Ill. 2d at 15. The court reasoned that the amendments constituted special legislation because the classification, limited to car dealerships, was arbitrarily applied without adequate justification or connection to its purpose. See id. at 28-29.

Similar to Allen, the IHLA argues that the Legislature's focus on a subset of employees in the hotel industry, to the exclusion of all other industries, is without merit. Furthermore, the IHLA claims Cook County hotels have reported a decrease in occupational injuries from hotel room attendants. The IHLA also notes that no evidence exists to suggest that employees in other industries do not face similar injuries. Therefore, the IHLA asserts that the Amendment is, like in Allen, special legislation.

Defendants assert that Allen is distinguishable from the present case. Defendants contend that in Allen, the court struck down the amendments that singled out businesses because they were "entirely antithetical" to the purpose of the legislation. Defendants

claim that the _Allen_ court concluded the amendments arbitrary because they did not forward the goals cited by the legislature and did not comport with the purposes of the Consumer Fraud Act. Rather, the court noted that the amendments actually protected vehicle dealers from legitimate claims, rather than help consumers. _See id._ at 32-33. In contrast, Defendants claim the purpose of the One Day Rest in Seven Act – to protect the health and dignity of hotel workers – is forwarded by the Amendment in this case.

In addition, Defendants argue that legislatures may constitutionally target particular occupations for workplace regulation. Defendants string cite to several statutes, including: (1) the Sales Representative Act, 820 ILCS 105/3(d), where hand harvest agricultural workers paid by piece rate, domestic service workers, and outside salesmen are exempted from minimum wage protections; (2) the Broadcast Industry Free Market Act, 820 ILCS 17/10, where post-employment covenants not to compete are barred for broadcast industry employees only; and, (3) the Day and Temporary Labor Services Act, 820 ILCS 175/1 _et seq._, where particular workplace protections and benefits apply to day laborers only. These statutes, Defendants argue, evidence that the Amendment in this case is neither exceptional nor constitutionally suspect in providing workplace protection to a single occupation working for a particular type of employer.

## B.  Equal Protection

The IHLA argues the Amendment also violates equal protection under both the Illinois and the United States Constitutions. To establish federal and state equal protection violations, a plaintiff must show that no set of facts reasonably could be conceived to establish a rational basis for the legislation. _See U.S. R.R. Retirement Brd. v. Fritz,_ 449 U.S. 166, 179 (1980). Standing on the above arguments, the IHLA claims that there is no distinction between the realities faced by hotel room attendants in Cook County and those faced by all other Illinois employees. Due to the above analysis, the Court holds the Amendment does not violate the equal protection clauses of either the Illinois or the United States Constitutions.

..........  ....................  ⑭018/034

## C.    Preemption

The IHLA claims that the Amendment is preempted by the NLRA. The IHLA notes that free collective bargaining between employers and unions representing their employees is the cornerstone of the NLRA. Specifically, the IHLA asserts that the State's effort to regulate the Hotel Employers Labor Relation Association ("HERLA") members' ability to negotiate freely over conditions of employment for Local 1 members is incompatible with federal law. Defendants argue that the IHLA's preemption argument is meritless because the Amendment creates a statutory, not contractual, duty for all hotel employers to provide rest breaks to hotel room attendants, without any reference to collective bargaining agreements.

The Court must begin the preemption question first with the Constitution's Supremacy Clause. See Cannon v. Edgar, 33 F.3d 880, 883 (7th Cir. 1994). The Supremacy Clause provides, in part, that "the Laws of the United States which shall be made in Pursuance [of the Constitution] ... shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2d. The NLRA is an act of Congress made "in pursuance" of the Constitution. Commonwealth Edison Co. v. Int'l Bhd .of Elec. Workers, Local Union No. 15, 961 F.Supp 1169, 1178 (N.D. Ill. 1997). Therefore, the NLRA is the supreme law of the land and any state statute that the NLRA preempts thereby violates the Constitution. Commonwealth, 961 F.Supp at 1178. To determine whether the Amendment is pre-empted by the NLRA and therefore invalid under the Supremacy Clause, the Court must decide if Congress intended its act to preempt such law. See id.

The NLRA is a "comprehensive code passed by Congress to regulate labor relations in activities that affect interstate and foreign commerce." Nash v. Fl. Indus. Comm'n, 389 U.S. 235, 238 (1967). It allows for the right of employees to self-organize and participate in collective bargaining. See Cannon, 33 F.3d at 883. The NLRA leaves the bargaining process up to the parties. Id. at 884.

The IHLA cites two United States Supreme Court cases that articulate two preemption doctrines under the NLRA. First, under San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959), the Court held state laws may not interfere with conduct regulated by Sections 7 or 8 under the NLRA, which includes collective bargaining.

However, Garmon preemption is not absolute. A claim is not be preempted under Garmon if the activity: (1) is merely of peripheral concern to federal labor law; or (2) touches interests deeply rooted in local feeling and responsibility. See Garmon, 359 U.S. at 244–45. Second, under Lodge 76, International Association of Machinists v. Wisconsin Employment Relations Commission, 427 U.S. 132, 146–47 (1976), the Court held state laws may not interfere with the balance of power between unions and employers established by the NLRA through the use of collective bargaining.

The IHLA argues the Amendment violates the Garmon preemption doctrine because it eliminates the bargaining process by unlawfully imposing mandatory subjects of bargaining into the parties' collective bargaining agreement, without allowing for negotiation. For example, the Amendment's mandatory subjects of bargaining include the required two 15 minute paid breaks and the one 30 minute unpaid meal period, which were not negotiated by the unionized hotel employers. The IHLA asserts that the Amendment is an intrusion into the power of Congress, as Congress, not the States, occupies the field of labor management. The IHLA notes that collective bargaining is regulated solely by the NLRA, which provides for free collective bargaining. See Cannon, 33 F.3d at 884 (providing that the NLRA does not require parties to reach an agreement, but instead leaves the bargaining process up to the parties).

The IHLA cites to Commonwealth Edison Company v. International Brotherhood of Electrical Workers, Local Union No. 15, 961 F.Supp 1169 (N.D. Ill. 1997) and Cannon v. Edgar, 33 F.3d 880, to support its argument for Garmon preemption. In Commonwealth, the Seventh Circuit held the Illinois Collective Bargaining Successor Employers Act was "in direct conflict with the NLRA's fundamental premise of free collective bargaining." 961 F.Supp at 1180. The court reasoned that the Act was preempted because it mandated a new employer to assume an agreement originally negotiated by the former employer and labor organization, thereby taking away the new employer's bargaining rights. Id. at 1181.

Similarly, in Cannon, the Seventh Circuit held the Illinois Burial Act was preempted under Garmon. The Act required cemeteries and gravediggers to negotiate for a pool of workers who would perform religiously required interments during labor disputes. Cannon, 33 F.3d at 882. The court held the Act sought to regulate "a particular

term of the bargaining process – that of a pool of workers – and, further, require[ed] the parties to actually agree on a particular pool of workers or face sanctions at the hands of Illinois courts." Id. at 884.

Like Cannon and Commonwealth, here the IHLA claims that the Amendment's provisions interfere with HELRA members' ability to negotiate freely. The IHLA refer the Court to the deposition testimony of Henry Tamarin ("Tamarin"), who works as the trustee to Local 1 HERE in Chicago. Tamarin acknowledged that bargaining occurred regarding Local 1's proposal to include paid rest breaks. Therefore, the IHLA argues that the Amendment has now eliminated this bargaining process, which admittedly had gone on in the past.

In addition, the IHLA asserts that the two exceptions to the Garmon preemption doctrine do not apply. First, the "peripheral concern to federal labor law" is inapplicable because the Amendment forces unionized hotel employers to provide hotel room attendants with certain conditions in the absence of any negotiation. This, the IHLA state, is like in Cannon, where the court determined that the Illinois Burial Act was not peripheral to the NLRA because performing burials during a labor dispute was a subject both parties negotiated about in collective bargaining. Here, the Amendment eliminates bargaining for rest breaks, which is a central, and not peripheral, concern to federal labor law.

Second, the "deeply rooted state interest in local feeling and responsibility," exception does not apply because the Amendment is unrelated to general state law. The Amendment neither creates a common law tort nor regulates public safety. Therefore, the IHLA argues that because the Amendment compels hotel employers to provide certain benefits they have not bargained for, the Amendment violates section 8(d) of the NLRA. See Commonwealth, 961 F.Supp at 1183 (holding that the statute was in direct violation of section 8(d) of the NLRA because it forced employers to assume terms not bargained for). Part 8, section (d) of the NLRA provides, in part:

> Obligation to bargain collectively. For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder,

> and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession .... 29 USCS 158(d).

Next, the IHLA argues the Amendment violates the <u>Machinists</u> preemption doctrine for the same reasons as stated above. The IHLA claims that the Amendment interferes with the balance of power between unions and employers established by the NLRA through the use of collective bargaining. Again, the IHLA states that the Amendment is preempted under <u>Machinists</u> because hotel employers are now prohibited from exercising their rights under Section 8(d) of the NLRA to not be compelled to agree to a proposal.

In contrast, Defendants assert that State minimum labor standards affecting union and non-union employees are never preempted. Defendants claim that the Amendment is a minimum labor standard and no different from other Illinois laws governing minimum wages, maximum working hours, rest breaks and other workplace rules.

Defendants cite <u>Metropolitan Life Insurance Company v. Massachusetts</u>, 471 U.S. 724 (1985), where the Supreme Court addressed whether a Massachusetts statute setting forth minimum health care benefits for inclusion in insurance policies was preempted by the NLRA. The Court held that though the statute in question potentially limited an employee's right to choose one thing by requiring that the employee be provided with something else, the statute did not limit the rights of self-organization or collective bargaining protected by the NLRA. <u>Metropolitan Life Ins. Co.</u>, 471 U.S. at 758. The Court also stated that the NLRA is concerned with ensuring an equitable bargaining process and not related to local or federal regulation establishing minimum terms of employment. <u>See</u> <u>id.</u> at 754.

In addition, Defendants cite to <u>Fort Halifax Packing Company v. Coyne</u>, 482 U.S. 1 (1987), where the Supreme Court upheld a Maine statute requiring employers to provide a one-time severance payment to employees in the event of a plant closing. The Court held that the law was a valid exercise of the State's police power to establish minimum labor standards and did not intrude upon collective bargaining. <u>Fort Halifax Packing Co.</u>, 482 U.S. at 22.

Defendants claim that Metropolitan and Fort Halifax point out that setting minimum labor standards does not violate the NLRA. Defendants further assert that here, the Amendment simply sets a minimum labor standard: that all hotel room attendants in Cook County should have at least two 15 minute breaks and a 30 minute meal break.

As to the Garmon preemption doctrine, Defendants argue that it is inapplicable in this case because the Amendment does not touch on conduct protected by the NLRA. Defendants contend that the Garmon doctrine applies only when a state sets forth standards of *conduct* inconsistent with the NLRA requirements, or when a state provides for its own regulatory or judicial remedies. Essentially, Defendants contend that the Amendment is a labor law of general applicability and argues that the Supreme Court has already rejected the argument that state workplace laws of general applicability interfere with the collective bargaining process.

Defendants also attempt to distinguish Commonwealth, where the court held the statute in question violated Garmon because it forced a new employer to honor a collective bargaining agreement it did not bargain for. See 961 F.Supp. at 1181. Defendants argue that Commonwealth is different from the present facts because there, an employer was forced to become a party to a collective bargaining agreement, whereas here, there is simply a minimum labor standard the employer must abide by.

Furthermore, Defendants argue Cannon can be distinguished because again, Cannon did not involve a statute that set a minimum labor standard. 33 F.3d at 882. Defendants also argue that in contrast to Cannon, the Amendment in this case does not require parties to agree to any terms at all in their collective bargaining agreements. Rather, the Amendment sets statutory minimum labor standards that apply in union and non-union settings alike.

Defendants re-state much of the same argument made against the application of the Garmon doctrine when arguing against the application of the Machinists doctrine. Defendants assert that the Amendment creates a statutory, not contractual, right to rest breaks and does not require any party to include terms in their collective bargaining agreements. Defendants contend that because the Machinists preemption doctrine is concerned with the bargaining *process*, it is inapplicable here. Defendants agree that a

statute that interferes with the ability to replace striking workers, (see 520 South Michigan Ave Assoc., Ltd v. Devine, 433 F.3d 961 (2006)) or one which requires a pool of workers to be established to work, even when on strike (see Cannon, 33 F.3d 880), certainly violates the Machinists doctrine. However, Defendants argue that the present Amendment is significantly different from the statutes at issue in those cases. Therefore, Defendants argue that federal law does not preempt the Amendment.

The IHLA disputes Defendants' contention that the Amendment in this case sets a minimum labor standard. Rather, the IHLA argues that the Amendment cannot be a minimum labor standard under Metropolitan Life and Fort Halifax because it does not affect union and non-union employees *equally* across the *entire* State of Illinois. In Metropolitan Life and Fort Halifax the policies were statewide. The IHLA notes that in this case, the Amendment protects only a tiny fraction of Illinois employees in a single area – hotel room attendants in Cook County – where almost all of Local 1 members work.

The IHLA additionally asserts that the Amendment is not a minimum labor standard because it impacts the collective bargaining relationship between hotel employers and Local 1. As argued above, the IHLA claims the Amendment intrudes into the substantive aspects of the parties' negotiations, citing to Tamarin's testimony that collective bargaining agreements almost always address the subject of breaks. Therefore, because the Amendment would take the issue of rest breaks off the bargaining table, it impedes the collective bargaining process.

The question the Court must address is whether federal law forbids this kind of interference with collective bargaining. The Court does not believe it does. Though rest breaks have been an issue at the bargaining table, the Legislature's action indicates the apparent inability for hotel employees to actually benefit from the breaks they may have bargained for. As stated by the United States Supreme Court, The NLRA framework was created to allow parties to fairly reach agreements about contract terms. Metropolitan Life, 471 U.S. at 752. The Amendment demonstrates that fairness has not been attainable because hotel room attendants are not able to take breaks or stop for a meal, though such benefits may have been agreed upon at the bargaining table in the past.

The NLRA's purpose is to "remedy '[t]he inequality of bargaining power between employees who do not possess full freedom of association or actual liberty of contract, and employers who are organized in the corporate or other forms of ownership association.'" Id. at 753. Ultimately, in passing the NLRA, Congress sought to remedy the problem of depressed wage rates and the widening gap between wages and profits. Id. at 754. Thus, the "evil" Congress was targeting was not related to minimum terms of employment. Id. Therefore, state legislation imposing minimal requirements on contract terms do not interfere with the general goals of the NLRA and, thereby, do not preempt the NLRA. Id. at 754-55.

Here, in adopting the Amendment, the Illinois Legislature merely imposed a minimal requirement that hotel room attendants be allowed certain rest periods. Such a law does not interfere with the general goals of the NLRA. Therefore, the first Garmon exception is applicable, as the Amendment is concerned with something peripheral to the NLRA.

Furthermore, the States have always had latitude under their police powers to legislate "as 'to the protection of the lives, limbs, health, comfort, and quiet of all persons.'" Id. at 756 (quoting Slaughter-House Cases, 16 Wall. 36, 62 (1873)). A state's authority to protect its workers is demonstrated in the myriad of laws already in place, such as minimum wage laws, laws affecting occupational health and safety, and workmen's compensation laws. See De Canas v. Bica, 424 U.S. 351, 356 (1976). The Amendment is simply another law to protect a sector of hotel workers who need such protections due to the strenuous nature of their work and the competitive industry they work in.

Finally, the Amendment is not preempted under the Machinists doctrine because it does not intrude on the collective bargaining process. The Amendment does not order the parties to negotiate as to a specific condition or to agree on a certain term. More simply, the Amendment insures hotel room attendants be allowed a basic right to two fifteen minute breaks and a 30-minute mealtime.

## IV. ORDER

IT IS HEREBY ORDERED THAT:

    A.     The IHLA's Motion For Summary Judgment is DENIED;

    B.     Defendants' Motion for Summary Judgment is GRANTED;

**JAMES F HENRY**

Entered:

**JUL 2 8 2006**

_____ **Circuit Court - 1526**

Judge James F. Henry
Circuit Court of Cook County, Illinois
County Department, Chancery Division